## Town of Waterbury *vs.* The Hartford, Providence and Fishkill Railroad Company.

The Hancock Brook road was laid out by the county court in 1845, for two miles through a narrow and precipitous gorge, to accommodate by a shorter and more level route the travel which then passed around an ancient, circuitous and hilly road. In 1853, a railroad company, authorized by its charter to locate its road along the same general route and to occupy where necessary the track of any highway, took about a mile of the central portion of this road. By their charter, and by the general statute on the subject, it became their duty to *alter the highway* under the advice of the commissioners on the railroad, and *under their direction to put the highway thus altered into as good repair as it was before, the determination of the commissioners thereon to be final.* After taking the portion of the highway stated, the company surveyed and laid before the commissioners for their approval, a substitute road on the other side of the gorge. This road the commissioners disapproved, and advised the adoption of the ancient highway as the substitute road, which the company accordingly adopted, but made no repairs or improvements thereon, and the commissioners formally accepted. Held, on an application for a mandamus to compel the company to make the substitute road through the gorge, that so long as the commissioners were acting within their juris-

diction and without fraud, their determination could not be reviewed by the superior court; and that neither of the facts, that the route approved by them was an ancient and existing highway,—that it was so inconvenient a road that the Hancock Brook road had been required as a substitute for it,—and that it was substituted for the entire Hancock Brook road and not for the section occupied by the railroad merely, was sufficient to show that the commissioners had gone beyond their jurisdiction. (Judge Hinman dissenting.)

The superior court has no power to prescribe the route for such a substitute road, as the matter lies wholly within the jurisdiction of the commissioners, and the railroad company in entering upon private lands to make such a road without the sanction of the commissioners would be trespassers.

THIS was an application to the superior court for a mandamus, to compel the defendants, a railroad corporation, to construct a highway in the place of one taken for the site of their road.

The road taken by the railroad company was known as the Hancock Brook road, and prior to 1853 was a public highway with well known termini, situated in part in the town of Waterbury and in part in Plymouth. It had been laid out by the county court in the year 1845. It ran through a deep and narrow gorge, and furnished an easy and convenient road for the inhabitants of Plymouth and Bristol who had business intercourse with Waterbury, and before it was obstructed by the defendants was considerably traveled. It was about two miles in length, and about one mile of it in the centre on the east side of the gorge was occupied by the defendants with their railroad.

It became necessary for the defendants, in the construction of their railroad under their charter in the year 1853, to pass through this gorge and over the part of this highway taken by them. They accordingly so located their road, and the location was approved by the commissioners on the road, according to the requirements of their charter. The defendants then proceeded to lay out a new highway in substitution for the portion taken by them, on the other side of the gorge, and submitted their survey of the same to the commissioners for their approval. The commissioners however disapproved of the location, and the defendants thereupon, in pursuance of the advice of the commissioners, entered by their engineer

upon an ancient highway which crossed the Hancock Brook road at its upper terminus, and followed this highway in a circuitous course, over a steep hill, to a road known as the Waterbury turnpike, and along this turnpike to the lower terminus of the Hancock Brook road, and submitted their doings to the commissioners for approval, who approved the same. This route was adopted by the defendants and approved by the commissioners as a substitute for the Hancock Brook road, but the defendants made no alterations in the roads thus substituted, nor any improvements upon them, to render them more convenient than they had been, and the route was circuitous, hilly, and wholly outside of the gorge in which the Hancock Brook road was laid, and the approval by the commissioners of the adoption of this road by the defendants, was in effect an approval of the absolute discontinuance of the Hancock Brook road, and a diversion of the travel therefrom into the old and inconvenient highway through which it was accustomed to pass before the Hancock Brook road was made. The ancient highway was then and had immemorially been open to and used by the public.

The petitioners offered evidence to prove, that notwithstanding the construction of the railroad, public convenience and necessity required the restoration of the Hancock Brook road; that such restoration was practicable, and would not be unreasonably expensive; and that a new road parallel with the obstructed portion, and between the points of intersection, would effect that purpose, and would not be dangerous. The respondents claimed and offered evidence to show that the construction of their railroad had very much lessened the necessity for continuing the Hancock Brook road,—that the gorge was so deep, precipitous and narrow, that a change of the road to the westerly side, and the construction of a new portion of road as a substitute for that taken, would be difficult, and (looking to the altered necessities of the public) unreasonably expensive,—and that it would be so contiguous to the railroad as to render travel unsafe.

This testimony was received subject to exception, and upon it the court found that the Hancock Brook road was a

much more direct and feasible one than the ancient highway, which was the only road connecting that section with Waterbury before the laying out of the former, and had been, since the obstruction of the former by the railroad, the only road by which its inhabitants could have communication with that town,—that a restoration of the Hancock Brook road to its former usefulness could be effected by constructing a substitute road on the west side of the brook, between the points where the railroad intersects and obstructs it,—that the travel through the road, by reason of the wild, narrow, and precipitous character of the defile, would be somewhat more dangerous, at the time when trains were passing, than if the country was level,—that the expense of such alteration and restoration would be between $2,000 and $2,500,—and that the construction of the railroad had so far accommodated the long travel from Bristol and other points, that, (looking to the amount of travel and the expense to be incurred,) public necessity and convenience could not be said to require the construction of a new road through the gorge if none had been constructed, and it was now an open question upon a new application to the court for the laying out of a road.

The defendants' charter contained the following provision: " In all cases where any road or public highway is so located that said railroad cannot be judiciously laid out and made without interfering therewith, in such case or cases, such corporation may by their engineer cause such road or roads to be so changed or altered as that said road may be made on the best site of ground for the purpose : *provided*, that when the location of any road or highway is altered, the consent of the commissioners be first had to the alteration; and provided that said corporation shall put such road thus altered in as good repair as the old one was at the time of removing the same."*

---

* The 12th section of the general statute with regard to railroads is as follows:—" Whenever it shall be necessary for the construction of a railroad, to intersect or cross * * * any public highway or street, it shall be lawful for the corporation to construct said railroad across or upon the same, provided the commissioners on said road shall adjudge it necessary, but said corporation shall restore the said * * * highway or street thus intersected, to its former

The superior court being of opinion that the substitution of the route adopted, for the road taken by the defendants, was a discontinuance of the latter road, and not an " alteration " of the same within the intent of their charter, and that the commissioners in approving the adoption of that route had gone beyond their jurisdiction, and that their acts were in consequence void, and that it was the duty of the defendants to make their alteration of the road such that the public travel might be continued through the road and through the gorge, issued a peremptory mandamus ordering the defendants " to restore and repair " the Hancock Brook road.

The defendants, by motion in error, brought the record, (which contained a statement of the facts made up by the court in rendering judgment,) before this court for revision.

*Baldwin,* for the plaintiffs in error.

1. The superior court erred in granting a mandamus to compel the railroad company to make a substitute road where the commissioners had not approved of its location, and much more in ordering it made where the commissioners had expressly refused to allow it.   It was not claimed that if a substitute highway is to be made in the gorge west of the brook, (where in the opinion of the court below it ought to be made,) the location made by the engineer was not the best and most feasible that could be made.   It must be taken therefore that the superior court has ordered it to be made there.   But the commissioners have disapproved of that, or of any location in the gorge, as dangerous to the public, and have advised and since approved the route outside of the

state, or in sufficient manner not to impair its usefulness; and in all cases where any road, highway or street is so located that said railroad cannot be judiciously laid out and constructed across or upon the same without interfering therewith, in such case or cases, said corporation may, by and with the advice and consent of the said commissioners, cause such road, highway, or street to be changed or altered in such manner that said railroad may be made on the best site of ground for that purpose.   Provided such corporation shall put such road in as good repair as it was previous to such alteration, under the direction of said commissioners, whose determination thereon shall be final."

Town of Waterbury *v.* Hartford, Providence & Fishkill R. R. Co.

gorge which has been adopted.    The respondents insist that the commissioners and not the superior court represent the sovereign power of the state for this purpose, and that they have no power to do what they are required to do by the mandamus. No man's land can be taken by them for the construction of the substitute road, until the commissioners or other representatives of the sovereign power have judged it to be necessary for public use.    Whatever power on this subject is given to the towns or the superior court the legislature can resume at its pleasure, and confer it on any other agent; and in the case of railroad companies it has conferred this power on the commissioners of the roads, who have by the statute exclusive jurisdiction.    They may discontinue any part of a highway taken by a railroad company, and lay out a substitute highway, in as full a manner as the ordinary agents of the law in other cases.    And in determining what road shall be substituted for the part of any road taken by the railroad company, they may adopt an existing highway if in the exercise of their judgment it shall seem best.    The propriety of their action cannot be reviewed by the superior court, as their determination is final.    Rev. Stat., tit. 44, § 12.    There are no facts found which show that they went beyond the limits of their jurisdiction.    This court cannot, as a matter of law, say how far distant the commissioners had a right to go in laying out the substitute road.    It is to be presumed that the substituted route, considering the diminished travel, the great expense of making a road through the gorge, and the danger to the public in traveling there, is the best one that could have been adopted.

2.    A mandamus is not the proper remedy.    It lies only where a party refuses to perform a clear and absolute duty. Here the respondents have been willing to do everything that the sovereign power, through the commissioners, would allow them to do.    Ang. & Ames on Corp., § 707.

*R. I. Ingersoll* and *Kellogg*, for the defendants in error.

1.    The railroad company were bound by their charter and by the general statute with regard to railroads, whenever they

appropriated any part of a public highway for their track, to change or alter the highway, and put it into as good repair as when taken by the railroad company. 2 Private Acts, 1018. Rev. Stat., tit. 44, sec. 12. The language of the charter is, that "said corporation shall put *such road thus altered* in as good repair as the old one was, &c." The language of the statute is, "that they shall restore the *said highway* thus intersected to its former state or in sufficient manner not to impair its usefulness." The highway thus restored and put in repair must be the identical highway taken. This plain requirement the respondents have not complied with. They do not pretend to have restored or repaired this highway. They pretend to have *discontinued* the entire Hancock Brook road, and to have substituted for it another existing highway, laid out long before the Hancock Brook road, and then open to public travel. And the route thus adopted, was adopted merely to divert public travel *from* the Hancock Brook road, and not as a means of accommodating the travel *on* that road. Besides, this route does not connect the two termini of the Hancock Brook road at the points where the respondents have taken it. The restoration of the road must be by a new road made between the two termini left by the respondents, supplying precisely the section of the road taken by the respondents. Neither the railroad company nor the commissioners have any power to discontinue a public highway. This can be done solely by the selectmen of the towns and the superior court. Rev. Stat., tit. 24, § 23.

2. A mandamus is the proper remedy. *Cambridge* v. *Charlestown R. R. Co.*, 7 Met., 70. *Treat* v. *Middletown*, 8 Conn., 246. *Whitemarsh Township* v. *Phila. & Germantown R. R. Co.*, 8 Watts & Serg., 365. *Queen* v. *London & Birmingham Railway Co.*, 1 Eng. Railway Cases, 317. *Queen* v. *Bristol Dock Co.*, 2 id., 599. *Queen* v. *Birmingham & Gloucester Railway Co.*, id., 694. *Queen* v. *Manchester & Leeds Railway Co.*, id., 711. Ang. & Ames on Corp., sec. 707. Acts of 1857, p. 5.

Town of Waterbury v. Hartford, Providence & Fishkill R. R. Co.

ELLSWORTH, J. From the petition for the writ of mandamus, as well as from the finding of the court, it appears that a certain part of the defendants' railroad, (about one mile in length,) has been laid upon the traveled path of a public highway, and that it has been legally laid and established there under and in conformity to the defendants' charter, and under the authority and with the approval of the commissioners appointed by the state. No question whatever is made as to the manner in which it has been done, nor but that the charter is broad enough to render proper what has been done, at least in the first instance. Immediately upon this proceeding, the defendants procured the laying out of a new strip of road for public travel, to make good the mile they had taken for the railroad, on the other side of the gorge, a little west of the railroad track, and submitted their survey to the commissioners, but the latter disapproved of this location and rejected it, and themselves suggested a place for the new road which they would be willing to accept. The defendants adopted the route thus advised, and the new piece of road was laid out and established there, and no other highway has been made to supply the place of the mile taken by the defendants.

It was claimed by the defendants that these proceedings were virtually a discontinuance of that mile of highway, since it could be no longer used; and that the new road was the legal substitute therefor, though it lay somewhat farther west; that the commissioners, finding it could not be made any nearer, as two roads could not be made in the gorge, had a right to select a new path, though that path had been for a long time used as a part of another and distinct highway; and further that the defendants could do nothing more or different from what they had done, as the commissioners possessed exclusive and final power, and had peremptorily declined to take any further action in the premises.

The superior court was of opinion that so much of the old highway as had been taken as aforesaid was effectually discontinued and not merely changed or altered, so that what purported to be a change or alteration was not of that char-

acter, and was unauthorized and nugatory, and thereupon ordered a mandamus to restore and repair the old highway.

This order we think can not be sustained; and this for several reasons. The mile of the old highway taken, became, as is agreed, a part of the established railroad track; and this was done by the legislature itself; for it was done by the commissioners who represented the legislature. There is nothing objectionable in this act,—no invasion of right or property,—no unauthorized assumption of power. What was done was authorized by the charter, and directed under it by the agents of the government as necessary for the public safety, and when executed was obligatory and irrevocable save by the government itself. Indeed it was authorized by the same sovereign power under which the old highway was established and continued. *Morris & Essex R. R. Co.* v. *Newark*, 2 Stock. Cha. R., 360.

In the next place, the commissioners would not consent to have the new strip of road made in the gorge. This they forbade, and directed where it should be made and what should constitute the alteration of the part of the old highway discontinued; and having done this, there being no fraud, (and none is pretended,) we think the doings of the commissioners are conclusive on the company, and that they can not now locate the new path anywhere else. Here they have put it by authority, and here it must remain; and if we might judge of the expediency of the act, we should concur with the commissioners in the wisdom of the course pursued by them. But we ask, what can the company do? After establishing their railroad track in the gorge, they applied to the commissioners for liberty to attempt to build a new highway on the west side of the brook, but the commissioners forbade it, and commanded them to go farther west *out* of the gorge, and they obeyed. Can they now go *within* the gorge, allowing it to be physically possible to make a second road there? We think not, and, under the circumstances, that it is no proper subject for a mandamus by the superior court. The court had no jurisdiction over the commissioners, to pronounce upon their judgment or

their wisdom.   It could not know that a new highway was even possible, much less safe or practicable, in any better or more contiguous place than the one outside the gorge which was selected.   The commissioners were to say what changes or alterations would best accommodate the public travel at this spot under the circumstances.

But further, the defendants have no power or right, as matters stand, to make a new highway in the gorge.   They will become trespassers if they enter upon any man's land for such a purpose ; so will be every person who is willing to peril his safety by traveling upon such a road ; and an order of the court, will furnish no defense for the trespasser.   The commissioners only, we repeat, can authorize such acts, and if *they* will not allow them, there is no help for it by any ordinary process of the law known to this court.

It is again said that the new piece of road is outside of the gorge and is longer and more circuitous than the road covered by the railroad.   But the commissioners say this is the best and only practicable alteration in their judgment, and how much west it is, or how direct or indirect it is, does not appear, nor how much longer.   Nor, as matter of law, could these things govern us if they did appear.

Let me inquire what is expected to be done in carrying out this mandamus, if it is to stand in the absolute form in which the judgment is rendered.   The language is " to restore and repair the old highway as prayed for."   Are the defendants to go and take up their road throughout the entire mile, and reconstruct the old path, and thus ruin their entire enterprise ?   And what else can they now do ?   Is this really expected of the defendants ?   And is the superior court peremptorily to order it done, in its discretion, to accommodate a small neighborhood, possibly by a shorter road to the grist-mill or the grocery ?   We can not think this wise or proper; and yet we see not any other result, since no alteration of the highway is practicable within the gorge, and the commissioners will not allow of any therein.   Had the superior court directed where and in what manner its judgment should be carried into effect, it would perhaps have

perceived the difficulties attending a compliance with its mandate, and the severity of the mandate itself.

If any body should be reached and forced to obey a peremptory mandamus here, it should be the commissioners. They should be cited in, at least, and put under oath; when we do not doubt they could satisfy the petitioners and the court, that the public safety and convenience required them to pursue the very course they have pursued.

Again, it is said that the alteration prescribed is not a legal one, because the commissioners adopted part of an existing road. Wherein consists the objection? Suppose the road taken by way of alteration lay near the west bank of the brook, in the gorge instead of out of it, and to take it was the best and only thing which could be done to meet the wants of this line of travel, could not the commissioners make that alteration, even although the old highway is at the place virtually and necessarily rendered impassable? Every highway that is taken for the railroad track by the order of the legislature or its commissioners is *pro hac vice* discontinued, else we put upon the statute a very narrow and technical construction, one calculated to embarrass the whole matter, for then not a foot of any highway could be taken without a formal discontinuance of the old highway by some public authority. We know that the universal practice is quite otherwise. Highways, to a greater or less extent, have been taken by every railroad company in the state without any other or more formal discontinuance than in this case. Two modes of travel are needed through this gorge, but one only can be continued. Which shall it be? The legislature have decided the question by their commissioners in favor of these defendants, and we see no reason to interfere, under the circumstances, even if we had the power, which we think we have not.

We think there is error, and that the judgment below must be reversed.

In this opinion Storrs, C. J., concurred.

HINMAN, J., dissented.   He thought the discontinuance of a portion of the Hancock Brook road, which the finding showed to have been laid out by the county court as necessary long after all the other roads by means of which, in a circuitous route, a traveler might pass from one of its termini to the other, and the attempted substitution of other long established roads, together with a larger portion of the Waterbury river turnpike than the whole extent of the discontinued highway, a clear evasion of the provisions of the general statute and of the defendants' charter, which require that when they alter or in any way interfere with a highway they shall restore it to its former usefulness.   He considered the discontinuance of about a mile, in the centre of a short highway of only two miles length, which was established for the purpose of shortening the distance between its termini, and assuming to direct the travel, which was accommodated by it, over the old circuitous highways, to avoid the necessity of traveling over which the discontinued highway was ordered to be built, a mere endeavor, under the pretence of re-surveying and re-establishing old highways, which the finding says had immemorially been open to, and used by the public, to save to the defendants the $2,000 or $2,500, which it would cost to restore the discontinued highway ;— and that the power to do this involved the power to discontinue almost any portion of any highway which the defendants might have occasion to alter for the purposes of their railroad, as there were probably but few if any highways upon their route that were so situated that different points upon them might not be reached by passing circuitously over other highways in the vicinity without passing directly from one point to the other on the same highway.   He considered that the defendants had in effect discontinued the middle portion of what the finding says " was a distinct, specific public highway, with well known termini," and that they had substituted nothing in its place ; and thought it obvious that no legislature would intentionally confer any such power on any railroad corporation ; and that they had not in fact given any such power to the defendants here, either directly or through

the commissioners, who are always careful enough of the interests of railroad corporations, although, in theory, they are said to represent the public. He was of opinion, therefore, that the superior court judged correctly upon the application, and thought the judgment should be affirmed.

Judgment reversed.