THE TOWN OF BRISTOL *vs.* THE NEW ENGLAND RAILROAD COMPANY.

First Judicial District, Hartford, January Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The board of railroad commissioners has the power, in adopting a plan for the removal of a grade crossing on one street, to locate a wing wall or supporting abutment embodied in the plan, in an adjoining highway ; and the question of the necessity of such location for the purpose intended, can be raised only by an appeal from the commissioners' order.

In the case at bar the plaintiff sought to restrain the defendant from placing a wing wall or supporting abutment upon North Main street. The defendant, in justification, set forth at length the order of the railroad commissioners directing the removal of a grade crossing on Main street, and alleged that it intended to build the structure complained of in exact accordance with this order. To this defense the plaintiff demurred, upon the ground that the order did not authorize nor justify the encroachment on North Main street. *Held :*—

1. That the site of the proposed abutment was sufficiently designated in the order and map of the railroad commissioners, and therefore the question whether any portion of the land within the true limits of North Main street was to be covered by this authorized structure, was immaterial.

VOL. LXX—20

2. That the order indicated that the commissioners had fixed the lo-
cation in question with the full understanding that it might be,
and probably was, within the limits of the highway.

3. That the order being sufficient on its face, the question of a possible
latent defect therein could not be raised upon demurrer; nor was it
open to the plaintiff to attack the order as having been unadvisedly
made, or as made under a misapprehension of essential conditions.

A demurrer to the effect that all the allegations of the answer are in-
sufficient in law to justify the grievance set forth in the complaint,
is too general.

In its answer the defendant set up two distinct defenses: the first con-
sisting of admissions and denials of the allegations of the com-
plaint, and the second of an alleged justification. Whether these
defenses ought not, under the rules of the Practice Act, to have
been alleged as a single defense, *quære*.

[Argued January 6th—decided January 21st, 1898.]

ACTION for an injunction to restrain the defendant from
building an abutment or other structure as part of an over-
head railroad crossing, within the limits of North Main
street in Bristol, brought to the Superior Court in Hartford
County and tried to the court, *Prentice, J.*, upon the plain-
tiff's demurrer to the defendant's second defenses; the court
held such defenses sufficient and overruled the demurrers
thereto, and the plaintiff appealed for alleged errors in the
rulings of the court. *No error.*

The complaint contains two counts, the first being as fol-
lows:—" 1. Main street and North Main street are highways
of the town of Bristol, over which said town has all the
rights and duties which by law are vested in towns as to
their public highways. 2. Said streets are the two principal
business streets of said town. The travel on both said streets,
near and at their junction, is very great, on foot, and in trucks,
wagons, bicycles, and other vehicles, and an electric street
railway also passes from one street to the other at that cor-
ner, at a grade of about five feet to the hundred. 3. The
defendant is planning to build a railway bridge over Main
street, and an embankment on its land northerly of North
Main street to support its railway tracks, and it intends and
threatens to, and will, unless it is restrained by this court,
build a stone abutment to support said embankment within

the limits of said North Main street, and so as to encroach upon said street and occupy a strip thereof about forty feet long, about four and a half feet in width at the corner, and about six feet in width at the widest point, as shown by a map of said proposed encroachment hereto annexed and marked Exhibit A. 4. Said encroachment will greatly obstruct and inconvenience the travel on said highway; and, in addition thereto, it will, by cutting off the view of each street from travelers approaching the corner upon the other street, make said corner very dangerous because of the likelihood of collision between wagons and other vehicles, tramway cars, and foot passengers approaching said corner on the two streets. Such danger will be especially great because of the proposed operation of said railway across said bridge over Main street, and nearly parallel to and very near the line of North Main street, whereby horses will be liable to be frightened and become uncontrollable at and near said corner, by the sound and sight of passing railway trains. The plaintiff claims an injunction to restrain the defendant from building any abutment or other structure within the lines of North Main street, or in any way encroaching thereon."

The second count alleges: "Paragraphs 1 and 2 of the first count are made similarly numbered paragraphs of this count. 3. The defendant is planning to build a railway bridge over Main street and an embankment, wholly or in part, on its land on the north side of North Main street to support its railway tracks, and it intends and threatens to, and will, unless it is restrained by this court, build a stone abutment, or other structure, to support said embankment within the limits of said North Main street and so as to encroach upon said street and occupy a portion thereof about twenty-one (21) feet long, about eleven (11) feet in width at the corner, and about fourteen (14) feet in width at the widest point. 4. Paragraph 4 of the first count is made paragraph 4 of this count."

The defendant's answer to both counts is the same, and contains two defenses: "*First Defense.* 1. The defendant admits that Main street and North Main street are highways

of the town of Bristol, and that the defendant is planning to build a bridge to carry its railway over the highway at the corner of Main and North Main streets, including as a necessary part of said bridge a stone wall or abutment to support it. 2. As to the other allegations of the plaintiff's complaint, the defendant has not sufficient knowledge to form a belief, and leaves the plaintiff to its proof thereof.

"*Second Defense*. On the second day of March, 1891, the railroad commissioners of the State of Connecticut duly made, after full hearing of all parties in interest, including the plaintiff in this action, an order, a copy of which is hereto annexed as Exhibit 1. A copy of each of the maps described in said order as delineating the alterations and changes ordered is also filed herewith, one to be marked Exhibit 2, and the other to be marked Exhibit 3. 2. The said order of the railroad commissioners was upon appeal affirmed by a decree of this court, July 29th, 1892. 3. The defendant, at the time when this action was brought, planned, and intended, and has ever since planned and intended, to build the embankment and stone abutment referred to in the complaint and alleged to be within the limits of North Main street in exact accordance with the said order of the railroad commissioners, affirmed by this court, and with said maps delineating the changes and alterations ordered."

Exhibit 1 is as follows :—

STATE OF CONNECTICUT,

OFFICE OF THE RAILROAD COMMISSIONERS,

HARTFORD, March 2d, 1891.

Be it remembered that on the 2d day of September, 1890, the following order for hearing and of notice was by us made in regard to the removal of the grade crossing of the New York & New England Railroad and the highway known as Main street, in the town of Bristol, viz. :

STATE OF CONNECTICUT,

OFFICE OF THE RAILROAD COMMISSIONERS,

HARTFORD, September 2d, 1890.

Whereas the directors of the New York & New England

Railroad Company failed to remove or apply for the removal during the year ending August 1st, 1890, of any grade crossing of a highway which crossed or was crossed by their railroad; and,

Whereas in our opinion, said directors should have applied for the removal of the grade crossing of their road and the highway known as Main street in the town of Bristol, therefore, be it

Ordered, that a hearing be had at the passenger station of said company in said Bristol on Wednesday, the 24th day of September, 1890, at 9 o'clock, A. M., as to what alterations, changes or removals, if any, shall be made at said crossing and by whom done, and that notice thereof be given to the selectmen of said town, to said company, and to the owners of the land adjoining said crossing and adjoining that portion of said highway to be changed in grade, by George T. Utley, by depositing in the post-office in Hartford, postage paid, true and attested copies of this order on or before the 6th day of September, instant, addressed one to each of the following-named parties, viz.: The Selectmen, Bristol, Conn.; James W. Perkins, secretary, N. Y. & N. E. R. R. Co., Boston, Mass.; Henry W. Gridley, the Bristol National Bank, Samantha Churchill, John B. Churchill, Augusta Churchill, the Society of Trinity Church, the Bristol Savings Bank, C. H. Riggs, F. H. Williams, Sarah C. Richards, A. H. Frinck, William Linstead, Henry A. Seymour, Rachael Nott, Charles E. Nott, Julius R. Mitchell, and Drusilla Mitchell, all of Bristol, Conn.

Geo. M. Woodruff, W. H. Hayward, Wm. O. Seymour, *Railroad Commissioners.*

And on the 24th day of September we met at the time and place named in said order, when it appeared and we do find that said order of notice had been duly complied with and that reasonable notice of said hearing had been given to said railroad company, to the municipality in which said crossing is situated, and to the owners of the land adjoining such crossing, and adjoining that part of the highway to be changed in grade; and all of said parties appeared and were

heard in part, and the further hearing was by agreement adjourned until the 25th of November, 1891, at the town hall in said Bristol, where said parties again appeared and were heard. And the further hearing on said matter was from time to time adjourned until the 11th day of February, instant, at this office at 2 o'clock P. M., and on the 3d day of February, instant, a further order of notice was by us issued as follows, viz.:

STATE OF CONNECTICUT,

OFFICE OF THE RAILROAD COMMISSIONERS,

HARTFORD, February 3d, 1891.

Whereas the undersigned railroad commissioners of Connecticut on the 2d day of September, 1890, issued their order as follows, viz.: (here follows the order of September 2d, 1890, printed above).

And the hearing in said matter having been adjourned from time to time till the 11th day of February, 1891, at 2 o'clock P.M., at our office in Hartford, therefore,

Ordered, that notice of said adjourned hearing be given by Geo. T. Utley by depositing in the post-office at Hartford true and attested copies of said original order and of this order addressed to each of the parties named in said order of September 2d, 1890, on or before the fifth day of February, instant.

Geo. M. Woodruff, W. H. Hayward, Wm. O. Seymour, *Railroad Commissioners.*

And pursuant to said adjournment and notice we met at said last-named time and place, when said parties again appeared and were fully and finally heard.

And now, after such notices and hearings, we being of opinion that the financial condition of the said New York & New England Railroad Company will warrant such order and that public safety requires the same, do hereby order such crossing removed, and do determine and order that the following alterations, changes, and removals be made and done, to wit: That the method of crossing be altered so that said highway instead of crossing said tracks at grade as at

present, be carried under said tracks, and for that purpose that the location of the said crossing be changed by the removal of said tracks from their present location to a point about eighty feet southerly therefrom, the same being carried over said highway on a double-track iron bridge with not less than twelve feet clear head room, with stone abutments located upon the street lines upon each side and with supporting columns upon the gutter lines of the street; said street being excavated so much as may be necessary to give said head room with approaches not exceeding nine feet in a hundred on the north side of said crossing and level upon the south side, and not exceeding five feet in a hundred on North Main street, and four feet in a hundred on Prospect street; said alterations and changes being also delineated and shown on two maps on file in this office, one marked " N. Y. & N. E. R. R. proposed under crossing of Main street, Bristol, Conn., scale 50 feet to one inch, chief engineer's office, Boston, February 10th, 1891, L. B. Bidwell, chief engineer; " and the other marked " Proposed change of Main street crossing, Bristol, Conn., scale 40 feet to one inch, Boston, February-10th, 1891, L. B. Bidwell, chief engineer." All of said alterations, changes, and removals to be made and done by said railroad company, and the expense thereof, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public highways shall sustain by reason of any change in the grade of such highways in consequence of any change, alteration, or removal above ordered, to be paid by said railroad company.

Geo. M. Woodruff, W. H. Hayward, Wm. O. Seymour, *Railroad Commissioners.*

. The plaintiff demurred to the second defense in each count. The demurrer to the second defense in the first count is as follows: " 1. All the allegations of said defense taken together are insufficient in law to justify the building of an embankment and abutment within the limits of said North Main street in the manner described in the complaint. 2. The order of the railroad commissioners, referred to in paragraph 1 of said defense, and affirmed as alleged in para-

graph 2 thereof, and the maps and exhibits 2 and 3, referred to in paragraph 1, as delineating the alterations and changes ordered, do not authorize any encroachment on said North Main street by an embankment to support the railway tracks of the defendant, or by a stone abutment to support said embankment. 3. The plan and intention of the defendant to build the embankment and stone abutment referred to in the complaint and alleged to be within the limits of said North Main street in exact accordance with the said order of the railroad commissioners, affirmed by this court, and with said maps delineating the changes and alterations ordered as set forth in paragraph 3 of said defense as amended, is not authorized or justified in so far as said plan or intention of the defendant involves any encroachment on said North Main street by an embankment or abutment. 4. Said order of the railroad commissioners, with the maps therein referred to, do not authorize any encroachment on North Main street for the purpose of locating, building, or maintaining the stone abutments referred to and described in said order."

The demurrer to the second defense to the second count, is as follows: "1. All the allegations of said defense taken together are insufficient in law to justify the building of an embankment and abutment within the limits of said North Main street, in the manner described in said second count. 2. The order of the railroad commissioners referred to in paragraph 1 of said defense, and affirmed as alleged in paragraph 2 thereof, and the maps and exhibits 2 and 3 referred to in paragraph 1, as delineating the alterations and changes ordered, do not authorize an encroachment on said North Main street as described in said second count of the complaint by an embankment to support the railway tracks of the defendant, or by a stone abutment or other structure to support said embankment. 3. The plan and intention of the defendant to build the embankment and stone abutment referred to in said second count of the complaint, and alleged to be within the limits of said North Main street in exact accordance with the said order of the railroad commissioners

affirmed by this court, and the said maps delineating the changes and alterations ordered as set forth in paragraph 3 in said defense, is not authorized or justified in so far as said plan or intention of the defendant involves any encroachment on said North Main street by an embankment, abutment, or other structure.  4. Said order of the railroad commissioners, with the maps therein referred to, do not authorize any encroachment on North Main street for the purpose of locating, building, or maintaining the stone abutment referred to and described in said order."

The demurrers were overruled by the trial court (*Prentice, J.*) and judgment rendered for the defendant. The appeal to this court assigns error "in overruling the demurrers."

*Frank L. Hungerford* and *Epaphroditus Peck*, for the appellant (plaintiff).

There is in the second defense no denial that the defendant in fact proposes to build its bridge abutments within the limits of North Main street, nor of the extent of the proposed encroachment. Unless such an encroachment is justified by the facts pleaded, the second defense is insufficient, and the demurrer to it should have been sustained. *Hotchkiss* v. *Plunkett*, 60 Conn. 230, 237 ; *Usher* v. *Waddingham*, 62 id. 412, 428 ; Steph. on .Pl. (9th Amer. ed.) 200. It is for the defendant to plead a complete and perfect justification, not for it to plead ambiguous matter, and then cast upon the plaintiff the burden of showing that such matter does not justify the threatened injury. *Woodruff* v. *New York & N. E. R. Co.*, 59 Conn. 63, 92. The interpretation of a written document is a question of law, and not one of fact. *Auffmordt* v. *Stevens*, 46 Conn. 413 ; *Gibbs* v. *Gilead Eccl. Society*, 38 id. 167 ; *Jordan* v. *Patterson*, 67 id. 479 ; *State* v. *Main*, 69 id. .137 ; *Hotchkiss* v. *Higgins*, 52 id. 213 ; *Gallup* v. *Fox*, 64 id. 491, 494.

*Edward D. Robbins*, for the appellee (defendant).

If the plaintiff intended to question the jurisdiction of

the railroad commissioners to make the order which has been pleaded in defense, it should have been explicitly so stated in the demurrers filed. The railroad commissioners ordered the railroad company to move the railroad tracks at Main street "from their present location to a point about eighty feet southerly therefrom," and to there carry them across Main street on a bridge. This necessitates the building of embankments and abutments to support the tracks and the bridge. The exact location of the tracks, embankment and abutments, is defined by reference to fixed monuments upon a map accompanying the order and described in it as delineating and showing the alterations and changes ordered. The plaintiff objects to the execution of this part of the order, because it carries a part of the embankment and of one abutment into North Main street. But the defendant cannot execute the order at all except by carrying it out according to its terms. The State acting through its railroad commissioners has full control of public highways, and the town of Bristol has no rights over North Main street except as an agent of the State. But it is said that the order of the railroad commissioners does not authorize the construction which is planned and intended by the defendant. If the counsel for the town believed this, it would seem as if their proper course would have been, as suggested by the court below, to deny the third paragraph of the answer. As the pleadings now stand, it appears that the construction intended is exactly what has been ordered by the railroad commissioners and by the Superior Court on appeal. If this is so, and if the order is valid, there is an end to discussion.

HAMERSLEY, J. The complaint alleges that the defendant intends to build a bridge for carrying its railroad tracks over Main street at the corner of that street and North Main street (they being highways within the limits of the town of Bristol), and threatens to build a stone abutment in connection with said bridge, so as to encroach upon North Main street and occupy a strip thereof as shown by the annexed map marked Exhibit A; and claims an in-

junction restraining the defendant from building any structure within the limits of North Main street. Exhibit *A* is a map drawn to a scale, purporting to be a *facsimile* of the defendant's plan and profiles for the abolition of the Main street grade crossing at Bristol, prepared and signed by its chief engineer.

The right of the plaintiff to ask an injunction arises from the duties imposed upon it by law, as the agent of the State, in the maintenance and care of these highways; and the defendant in its second defense sets up the paramount authority of the State, exercised through an order of the railroad commissioners, appropriating this portion of the highway as necessary for the abolition of a public nuisance endangering the lives of its citizens who use the highways.

The answer contains a first defense, in which each allegation of the complaint is either denied or admitted, and a second defense which purports to allege extrinsic facts sufficient, if proved, to defeat the plaintiff's action, admitting for the purposes of the defense the facts stated in the complaint.

The allegations of the defense are: 1. The existence of an order by the railroad commissioners directing the defendant to remove its present grade crossing of Main street, and for that purpose changing the location of said crossing to a point eighty feet southerly at the corner of Main and North Main streets, and directing the defendant to there build over Main street and adjoining North Main street a bridge with a wing or supporting abutment whose location is definitely fixed by the maps which are a part of the order. 2. The structure which the defendant threatens to build, as alleged in the complaint and shown on the maps contained in the complaint, is in exact accordance with the command of the commissioners contained in the order and the maps which are a part thereof.

If these allegations of fact are denied and proved, a complete defense to the action is established. Instead of replying by denial or otherwise to the defense, the plaintiff

has demurred; and the action of the court in overruling that demurrer is the only error assigned in this appeal.

Before dealing directly with the demurrer we consider what seems to be the plaintiff's conception of the fundamental defect claimed to be apparent in the second defense. It is this: An inspection of the record of the proceedings of the commissioners does not clearly indicate what portion, if any, of the land within the true limits of the highway is to be covered by the structure authorized. This claim is true; but it must be distinguished from a claim confounded with it, that the record does not precisely indicate that portion of the surface of the land which the structure authorized is to occupy. The latter claim is not true. A map drawn to a scale locating the structure in accordance with distances from permanent and known monuments, describes its actual location as precisely as is possible. Such is the character of the map now in question. It purports to denote corners of permanent buildings, and the center line of the appellee's present location fixed by public authority and made a matter of public record. It is unnecessary that a map of a projected structure, of the nature of that which was the subject of the orders of the railroad commissioners, should be so drawn as to describe every possible monument in the vicinity of its site. It is enough if it describes such and so many that, when viewed upon the ground and in relation to the ground, a competent surveyor can ascertain the points at which to set his stakes. The presumption is that the board of railroad commissioners, one of whose members the law requires to be a civil engineer, has made no order for the construction of a public work which cannot be precisely executed. On demurrer the answers which set forth such an order were entitled to the support of that presumption.

The exact position of the land to be occupied being thus sufficiently shown, any statement in the order of the precise point where the actual line of North Main street crosses this land is immaterial to the sufficiency of the defense. The commissioners are dealing with the abatement of a nuisance; their authority to order such construction of a bridge as is

necessary to most thoroughly abate that nuisance is complete, including the power to occupy land covered by a highway. They have no authority to determine the disputed lines of a highway, and were not bound to do so in making the order. The defense set up is complete, whether the land the defendant is ordered to occupy is covered to the extent of one foot or of twenty feet by the easement of a highway. If the plaintiff, as guardian of that highway, thought its limits were unnecessarily encroached upon, it was its duty to appeal from the order. The legal exercise of discretion by the commissioners cannot be challenged in any other way.

But, in this connection, the plaintiff claims that the record does not clearly show that the commissioners intended that any portion of the highway should be occupied. We think the record does clearly show that the commissioners made this location with a full understanding that the land occupied might be, and probably was, within the limits of this highway. Assuming that there must be an intention to appropriate the portion of the highway within the limits of the land designated, we think that intention sufficiently appears on the face of the record, which includes the order expressed in writing and in maps. The commissioners apparently decided that the structure described, covering the land defined, was necessary to the abatement of the nuisance, notwithstanding a portion of the land defined might be covered by the adjoining highway; and ordered the defendant to build that structure. This they had the power to do, and were not bound to first adjudicate the legal limits of that highway, and then, in addition to the limitation of the use of the highway necessarily involved in the location of the structure ordered, to formally condemn or discontinue as a highway a precise number of square feet; the decision made and the structure ordered, were a sufficient appropriation for that purpose, of such portion of the highway as actually covered land designated. It follows that when the defendant alleges the existence of this order, and that the structure it threatens to build, as alleged in the complaint, is in exact accordance with the order, it sets up a complete

and valid defense consistent with the truth of the essential allegations of the complaint. It alleges facts and not conclusions of law; it assumes the whole burden of proof properly belonging to it, *i. e.*, the burden of proving the existence of the order and the identity of the structure it has threatened to build, as alleged in the complaint, with the structure it has been ordered to build; and it does not, as claimed by the plaintiff, allege facts that in any event can be held equivalent to a general denial, for it admits the allegation material to the plaintiff's case, that the threatened structure is within the limits of the highway; and if the defendant fails to establish by proof the existence of the order and the identity of the structures, the admission of this fact entitles the plaintiff to judgment; if, on the other hand, the defendant does prove the facts it has alleged, then the fact admitted, material to the plaintiff's case, becomes immaterial to the case the defendant has established, and whether the fact so admitted is in reality a fact or not, cannot affect the defendant's right to a judgment.

"All demurrers must distinctly specify the reasons why the pleading demurred to is insufficient." General Statutes, § 873. Reasons for claiming the insufficiency of the second defense, not specified in the demurrer, do not demand discussion. The plaintiff is not entitled to a reversal of the judgment because the trial court did not sustain the demurrer for reasons not specified. The first reason stated in the demurrer is too general to have any force. It is claimed, under the fourth reason, that the clause in the written portion of the order directing the building of a bridge over Main street "with not less than twelve feet clear head room, with stone abutments located upon the street lines upon each side and with supporting columns upon the gutter lines of the street," controls the subsequent clause directing changes in North Main street, and contradicts and renders invalid that portion of the order contained in the maps which directs in detail the changes to be made in North Main street and fixes the exact location upon the surface of the land of the supporting wall or abutment to be there built. We do not so

read the order. The description of the bridge over Main street as one with abutments on the street lines and supporting columns on the gutter lines of that street, exhausts its force in describing the abutments and supporting columns mentioned, and that description cannot be construed as applicable to the portions of the order dealing with changes in other streets, nor as compelling a wing or supporting abutment on North Main street to be located upon the street line notwithstanding the portion of the order directing these changes locates with certainty the abutment in a different place.

Giving the widest allowable scope to the language of the two other reasons, they present in addition to the points already considered, only this claim: that the railroad commissioners had no power, in their order for the elimination of the grade crossing at Main street, to direct the abutment in question to be built within the lines of North Main street; and if they had such power they have not given such directions. If the commissioners had the power to order the erection of the abutment as described, covering a portion of the highway, it is immaterial to the sufficiency of the second defense, for reasons already stated, whether or not the abutment ordered actually extends within the legal lines of North Main street. That they had the power under Chap. 220 of the Public Acts of 1889, to order any changes or alterations in highways, including their partial discontinuance necessary to the elimination of a dangerous grade crossing, of which necessity the commissioners are the judges, subject to a review of their proceedings on appeal to the Superior Court, and that the law conferring this power is constitutional, is too well settled to be now questioned. *Suffield* v. *New Haven & N. Co.*, 53 Conn. 367, 370 ; *Fairfield's Appeal*, 57 id. 167, 171; *State's Attorney* v. *Branford*, 59 id. 402, 407 ; *Cullen* v. *New York, N. H. & H. R. Co.*, 66 id. 211, 222; *New York & N. E. R. Co.'s Appeal*, 62 id. 527. An appeal was taken from the order in question to the Superior Court and the order was affirmed by that court, and the judgment of the Superior Court was affirmed by this court in the case

last cited.  To all these proceedings the plaintiff was a
party.   So far as concerns this plaintiff the question of pub-
lic safety and that of the necessity of occupying any portion
of North Main street for the elimination of the grade crossing
as ordered, is *res judicata*.  *State's Attorney* v. *Branford*,
*supra*, p. 411.

The plaintiff suggests in argument that the course of pro-
ceedings by the commissioners, as recited in the order, lays
no valid foundation for an order directing changes in North
Main street.   The record of the commissioners' proceedings
on its face seems sufficient to justify any necessary change
in that highway, and being sufficient on its face, the question
of some possible latent defect cannot be raised by this de-
murrer, even if the plaintiff could raise it in any way other
than by appeal.

The brief and argument of the plaintiff suggest that its
real grievance is based on the assumption that the second
defense in some way cuts off or abridges its right to estab-
lish upon trial the claim that whatever this order may ap-
parently say, the commissioners did not in fact intend to
authorize the occupation of any part of North Main street,
and therefore did not authorize an abutment extending over
the line of that street.   We fail to see how this right, if the
plaintiff has such a right, is in any way affected by the mode
of pleading the second defense, or how the demurrer can be
construed as specifying such a reason for the insufficiency
of the pleading.   If the plaintiff can in this action, or in any
other action, attack the validity of the order, or establish a
meaning not apparent on its face, because the order was
made under a misapprehension of essential conditions, it cer-
tainly cannot do so by means of this demurrer.

We think the question raised by the demurrers to the
second defenses to the first and second counts, do not mate-
rially differ; no claim was made in argument that the same
considerations did not apply to both demurrers.

There may be doubt whether the true theory of the Prac-
tice Act would not in a case like this require the defendant
to allege the facts set up in the second defense, in connec-

tion with those set up in the first, as a single defense, rather than to make such facts the basis of a separate and distinct defense. The practical results of following either form may be substantially the same, and any error in such a matter is waived if not specified in a demurrer. As the question is not material to our decision we merely mention the doubt, in order to avoid any implied approval of the form followed.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.