THE TOWN OF MERIDEN ET AL. vs. ALFRED S. BENNETT ET AL.

Third Judicial District, New Haven, June Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

For the purpose of removing a grade-crossing, the railroad.commissioners are given the right (General Statutes, §§ 3705, 3713, 3714) to determine what alterations or removals shall be made in the crossing, its approaches, the method of crossing, and the location of the highway or railroad. Held that this involved the power to discontinue an existing highway and to lay out a new and substitute highway for the one so discontinued.

The length or extent of new highway necessary to be constructed in the removal of grade-crossings must depend upon the circumstances of each case, and is left to the reasonable judgment of the railroad commissioners, which is reviewable upon appeal to the Superior Court.

Section 2056 provides that the selectmen of any town may discontinue any highway therein "except when laid out by a court or the General Assembly." *Held* that a new highway laid out by the railroad commissioners under the statutes relating to the elimination of grade-crossings, was one laid out by the General Assembly, within the meaning of this section.

The fact that the order for the layout of the new or substitute highway was passed by the railroad commissioners with the approval and consent of the selectmen of the town, does not render it any less the order of the commissioners, nor does it make the layout of the new highway the act of the town.

Argued June 2d—decided July 24th, 1903.

ACTION in the nature of an appeal from an order of the county commissioners directing the town of Meriden to repair an alleged highway, brought to the Superior Court in New Haven County and reserved by that court, *Elmer, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for the defendants.*

*George A. Fay* and *William L. Bennett*, for the plaintiffs.

*Charles Kleiner* and *D. W. Coleman*, for the defendants.

HALL, J. On the 19th of July, 1901, the defendants in this proceeding, who are six citizens of the town of Cheshire, brought a complaint to the county commissioners of New Haven county, under General Statutes, § 2021, alleging that a certain highway in the town of Meriden, extending from a point near Hough's Mills, so-called, northeasterly along the east bank of the Quinnipiac River to the River Road, so-called, was out of repair, obstructed and impassable. This complaint came before the county commissioners on the 24th of September, 1901, and by continuance to the 3d of October, 1901, when the parties were heard, and on the 17th of May, 1902, the county commissioners found that said

highway was out of repair and obstructed, by reason of the embankments upon which the work was constructed having fallen in, and for other reasons, and ordered the selectmen of Meriden to repair said road by rebuilding said embankments and removing said obstructions, on or before the 1st of July, 1902.

The present action is an appeal to the Superior Court by the town of Meriden and one of its citizens, from such order, under General Statutes, § 2024.

The reasons for such appeal, as stated in said proceedings, are :—

1. "Said so-called public road or highway was not, at the time of said hearing before said board, and at the time of said decision, a public road or highway. 2. Said so-called public road or highway was, by the selectmen of the town of Meriden, on the 1st day of August, 1901, duly and legally discontinued as a public road or highway, which action of the selectmen was on the 2d day of October, 1901, duly approved by the town of Meriden. 3. At the time of said hearing and said order, said so-called public road or highway had been legally discontinued."

In support of the first of these reasons of appeal, it is contended by the plaintiffs that the railroad commissioners, in ordering, on the 25th of June, 1889, as hereinafter described, that the location of a certain highway be changed so that it should not cross the tracks of the Meriden, Waterbury and Connecticut River Railroad Company, at Hough's Mills, but should be connected with other existing highways, by a new highway, of which the highway ordered to be repaired is a part,—exceeded their powers.

In support of the second and third reasons of appeal the plaintiffs claim: (1) That said new highway, a part of which was ordered by the county commissioners to be repaired, was not in fact laid out by the railroad commissioners, but was laid out by an agreement between the said railroad company and the selectmen of Meriden; and (2) that, whether laid out by the railroad commissioners or by the selectmen under such agreement, it was within the

power of the selectmen of Meriden to discontinue that part of said new highway within their town, since such highway was not laid out either "by a court or the General Assembly," within the meaning of General Statutes, § 2056, which provides that "the selectmen of any town may, with its approbation, by a writing signed by them, discontinue any highway, or private way therein, except when laid out by a court or the general assembly."

With reference to these reasons of appeal, and said claims of the plaintiffs, the following facts were, in substance, found by the Superior Court, by agreement of the parties.

The highway, the northerly part of which has been ordered repaired, and the whole of which we shall call "the new highway," extends for a distance of about two thirds of a mile along the easterly side of the Quinnipiac River, about one half of it being in the town of Meriden and the remainder in the adjacent town of Cheshire, from a highway at its northern terminus called the "River Road," to a highway at its southern or western terminus called the "Cheshire Road." Said River Road crosses the Quinnipiac River and the Meriden, Waterbury and Connecticut River Railroad, at a point near the northern terminus of the new highway, and extends southerly along the west bank of the river, crossing the Cheshire Road, which also crosses the river and the railroad, at a point near the southern or western terminus of the new highway.

In June, 1887, the Meriden, Waterbury and Connecticut River Railroad Company submitted to the railroad commissioners, for their approval, the layout of its road along the west bank of the Quinnipiac River between the river and River Road, by which the railroad would not only cross the River Road and the Cheshire Road, at the points above described, but would also cross, at grade, at a point near "Hough's Mills" about midway between said two crossings of the River and Cheshire roads, another road, which may be designated as the "Hough's Mill Road," running from the town of Cheshire westerly across the river and into the town of Meriden, and connecting with the River Road a

PLAN
of
Change of Public Road
at
Hough Mills

short distance west of said proposed crossing of the Hough's Mill Road. Said Hough's Mill Road was in general use between said towns.

On June 30th, 1887, the railroad commissioners, by their order in regard to the streets and highways proposed to be crossed at grade by said railroad, " declined " to accept said proposed layout and location, but by their said order authorized the railroad company " to so alter the location of said streets and highways, and to raise or lower the same at said crossings as to cross over or under the same, as may be agreed upon with the selectmen of the towns, . . . or in case of failure to agree," then as might thereafter be ordered by the railroad commissioners. The town of Meriden was a party to said proceedings. Thereupon, in June, 1888, the town of Meriden discontinued a portion of said Hough's Mill Road on the west side of the river, from the point where said road connects with the River Road to a point 112 feet easterly, near Hough's Mills, including that part of said highway which was to be crossed by the railroad. The town of Cheshire appealed from said action of the town, and by agreement of the parties a judgment was rendered setting aside such discontinuance. While said appeal was pending the railroad company constructed its railroad at grade over said discontinued portion of the Hough's Mill Road.

In May, 1889, the directors of the Meriden, Waterbury and Connecticut River Railroad Company, acting apparently under General Statutes, § 3713, brought an application to the railroad commissioners, alleging that public safety and convenience required an alteration in the method of crossing, and in the location of said Hough's Mill Road. The towns of Meriden and Cheshire appeared by their selectmen and were heard in said proceeding, and the railroad commissioners, on the 25th of June, 1889, made this order: " Now, therefore, on consideration, with the approval and consent of the selectmen of both of said towns, we do authorize and empower said railroad company to change the location of said highway, so that the same shall not cross said track at said

Hough's Mills, but shall be connected with other existing highways by a new highway (the new highway in question) 60 feet in width to be laid out and located in the place and manner delineated on a map thereof on file in this office. . . . Said highway to be constructed and finished to the satisfaction of the selectmen of said towns of Meriden and Cheshire, or in case said company cannot agree with said selectmen, then to the satisfaction of this board. And when said new highway is completed the existing crossing at Hough's Mills to be closed at right of way of said railroad." The railroad commissioners having refused a request of the railroad company for a modification of this order, the railroad company complied with the same.

On the 12th of May, 1891, the railroad company brought its application to the railroad commissioners, alleging that it had constructed said new highway in a good and substantial manner, and to the acceptance of the town of Cheshire, but that the town of Meriden unjustly refused to accept the same, and that it was unable to agree with the selectmen of Meriden as to its acceptance, and asking the railroad commissioners to inspect the road, and, on finding it properly constructed, to direct it to be opened and the existing crossing at Hough's Mills to be closed as a highway. The towns of Meriden and Cheshire were made parties to this proceeding.

The town of Meriden objected, at the hearing, to the acceptance of the new highway, mainly upon the ground that the retaining walls and a culvert were not properly constructed. The railroad commissioners, on July 2d, 1891, found that while there was a question as to the sufficiency of said wall, it would be unreasonable to require it to be rebuilt at that time; that the location of the Hough's Mill Road had been changed in accordance with their order of June 25th, 1889, and that the new highway had been constructed and finished to the satisfaction of the board; and directed it to be forthwith opened to public travel, and the crossing at Hough's Mills to be thereupon closed. The crossing at Hough's Mills was thereupon closed, and the new highway was opened and used as a public highway until

about the year 1898, when that part of the same situated in the town of Meriden became dangerously defective and out of repair, and was closed to travel by the selectmen of Meriden.

On the 1st of August, 1901—after the commencement of the proceedings by citizens of the town of Cheshire to compel said road to be repaired, from the decision in which proceeding the present action is an appeal, and before the hearing upon said proceeding—the selectmen of Meriden, by a writing signed by them, resolved that so much of said new highway as lay within the town of Meriden be, and that the same was thereby, discontinued ; and on the 2d of October, 1901, the town of Meriden, at a duly called meeting, voted "that the doings of the selectmen" in closing such part of the new highway "be approved."

Whether we regard the order of the railroad commissioners of June 25th, 1889, directing a change of the location of the Hough's Mill Road, so that it should connect with the River Road and the Cheshire Road by the new highway delineated on the map, and the order of July 2d, 1901, confirming that of June 25th, as made by virtue of the authority conferred upon the railroad commissioners by General Statutes, § 3705, or § 3713, or § 3714, the facts above stated fail to show that the railroad commissioners exceeded their powers in directing the railroad company to construct the new highway. Section 3489 (Rev. 1888), under which the application of the railroad directors of May 17th, 1889, and the order of June 25th, 1889, seem to have been made, expressly empowers the railroad commissioners, for the purpose of removing a crossing at grade, of a highway and a railroad, to determine " what alterations or removals shall be made," " in such crossing, its approaches, the method of crossing, the location of the highway or railroad." Equally extensive powers, as to the elimination of such grade-crossings, are conferred upon the railroad commissioners, although by different language, by the other two sections referred to.

. But it is said that the railroad commissioners have laid out a new highway, and that they have no authority to do

so under these statutes, and that their power is limited to the alteration of an existing highway or of its location, and that such power does not include the right "to determine whether a new highway shall exist, and that public convenience and necessity demand its existence"; and as supporting this contention, we are referred to the case of *Fairfield's Appeal*, 57 Conn. 167, 171, and to the following language of this court in the case of *State's Attorney* v. *Branford*, 59 id. 402, 407: "It cannot be claimed that the commissioners have authority under the statute above recited (Public Acts, 1884, Chap. 100, § 1), or by any other statute, to lay out any new highway as an independent matter. They have no such power. They cannot interfere with the general powers of towns and selectmen to lay out all the needed new highways within their town limits." But the new highway in question was not laid out "as an independent matter." While in one sense it was a new road, it was in fact laid out as a substitute, in connection with parts of the River Road and the Cheshire Road, for, and as serving with said portions of said two roads, the purposes of that part of the Hough's Mill Road which was discontinued in order to remove a railroad crossing. It was manifestly laid out as a necessary and proper way of accommodating that public travel which had before been over the Hough's Mill crossing, by rendering the River Road and Cheshire Road crossings available for such travel. Both of the cases just cited hold that the railroad commissioners are empowered by statute to construct short portions of new highways as alterations of discontinued ways. This court said in *Cullen* v. *New York, N. H. & H. R. Co.*, 66 Conn. 211, 222: "It has always been the policy of the State to allow railroad companies, with the approval of the railroad commissioners, to lay out and construct their roads in the best possible line, and if necessary for this purpose to change the course of existing highways. . . . Such a change may result in the discontinuance of a part of a highway and the substitution of a new section of road, or the diversion of travel upon another existing highway."

The length of the new highway in question does not, necessarily and as a matter of law, render the order of the commissioners directing its construction invalid. The amount of new highway necessary to be constructed in altering or changing the location of existing ways, in order to remove or avoid railroad crossings, must necessarily depend to a great extent upon the circumstances of each particular case, and is left to the reasonable judgment of the railroad commissioners, reviewable upon appeal to the Superior Court. *Bristol* v. *New England R. Co.*, 70 Conn. 305, 319; *Suffield* v. *New Haven & N. Co.*, 53 id. 367, 370; *Waterbury* v. *Hartford, P. & F. R. Co.*, 27 id. 146, 155.

With reference to the powers conferred upon railroad commissioners by § 3713, we said in *Cullen* v. *New York, N. H. & H. R. Co.*, 66 Conn. 223: "Their authority sometimes trenches upon what would otherwise be within the exclusive jurisdiction of some particular municipality, and wherever it does, the latter must give way, for so only could any general policy of administration be carried out. . . . As highways must give place to railroads where both cannot occupy the same ground, so municipal control and management of highways must yield, at times, to State control and management, when safety of railway operation is in question."

The new highway was laid out and constructed by the railroad company under an order of the railroad commissioners, and not merely by the consent of the towns. The writing of June 25th, 1889, signed by the railroad commissioners, authorizing and empowering the railroad company to close Hough's Mill Road and to change its location, so that by the new highway it should be made to connect with the River and Cheshire roads, was a judgment of the railroad commissioners upon the matters alleged in the petition of the railroad directors, and was a determination by them, under the statutes, after a hearing and " on consideration," of precisely what alterations should be made in the discontinuance of old highways and in the substitution therefor of new ones, in order to remove the Hough's Mill

crossing. The fact that the entire decision rendered by the railroad commissioners was " with the approval and consent of the selectmen of both of said towns," does not render it any the less the order of the commissioners. *New Haven S. S. M. Co.* v. *New Haven*, 72 Conn. 276, 283 ; see also form of order in *Cullen* v. *New York, N. H. & H. R. Co.*, 66 Conn. 213 ; nor does it make the laying out of the new highway any more the act of the towns, than it does the closing of the Hough's Mill Road on the removal of the grade-crossing. If anything further is required to show that the new highway has become the substituted highway, by direction of the railroad commissioners, it is found in the language of their order of July 2d, 1891, in which they say : " We therefore direct it (the new highway) to be forthwith opened to public travel, and that the crossing at Hough's Mills be thereupon closed."

The act of the railroad commissioners in changing the location of a portion of the Hough's Mill Road so that that road should connect with the River and the Cheshire roads, by the new highway, was the act of the State, and the selectmen of Meriden had no power, under § 2056, to discontinue the portion of said highway within that town.

The railroad commissioners, in discontinuing certain highways and in substituting others therefor, in the removal of grade-crossings, under the general statutes referred to, like commissioners appointed by a special act of the legislature to remove particular grade-crossings, act by the supreme power of the State, and as the instrumentalities of the State itself. *New York & N. E. R. Co.'s Appeal*, 62 Conn. 527, 535.

The taking of the land for the new highway is an appropriation of the same by the State, for the purposes of a highway, necessary for the abolition of a public nuisance, and is an exercise of the paramount authority of the State through the agency of the railroad commissioners. *Bristol* v. *New England R. Co.*, 70 Conn. 315, 317. Provision is made in the statutes for the payment of damages resulting from such taking.

By the statutes referred to, and others of a similar charac-

ter, the State has established a tribunal to determine when and in what manner grade-crossings shall be removed. *Westbrook's Appeal*, 57 Conn. 95, 101. " Whether or not public safety requires any change of a highway at a grade-crossing, to the end that such crossing may be removed, is a question that the legislature has entrusted solely to the railroad commissioners as an original one, and to the Superior Court only by an appeal from their doings. . . . No appeal having been taken from the decision of the commissioners, that question was *res adjudicata*." *State's Attorney* v. *Branford*, 59 Conn. 402, 411. This language is equally applicable to the decision of such tribunal as to what changes, if any, are to be made at such a grade-crossing.

In *Waterbury* v. *Hartford, P. & F. R. Co.*, 27 Conn. 146, 154, the defendant had occupied about a mile of a public highway through a deep gorge, and with the approval of the commissioners of the railroad had substituted therefor another highway. Upon an application by the plaintiff town for a mandamus to compel a restoration of the road taken, or the construction of another highway in place of that thus substituted, this court, in denying the application, said : " The mile of the old highway taken became, as is agreed, a part of the established railroad track; and this was done by the legislature itself ; for it was done by the commissioners who represented the legislature. . . . What was done was authorized by the charter, and directed under it by the agents of the government as necessary for the public safety, and when executed was obligatory and irrevocable save by the government itself." As to whether there should be a highway or a railroad through the gorge, the court said: " The legislature have decided the question by their commissioners."

A highway laid out by "special delegated authority of the legislature " is laid out by the General Assembly, within the meaning of the exception in § 2056. In *Simmons* v. *Eastford*, 30 Conn. 286, 289, it was held that a highway laid out by a turnpike company, under authority from the legislature, was laid out by the General Assembly, and that the portion of such highway within the limits of the defendant town, which

by an agreement with the turnpike company, confirmed by the General Assembly, had been assumed by the town as a public highway, could not be discontinued by the selectmen of said town, under § 2056. As was said in that case, such limitation of the powers of the selectmen under this statute " is necessary to prevent a conflict of action between the selectmen and the General Assembly or the courts." It is necessary, in the present case, to prevent such a conflict between the selectmen and the railroad commissioners in the important work of the removal of grade-crossings.

Conceding for the purposes of this case that the new highway was not laid out by a "court," within the meaning of that word in said section, it was laid out by the General Assembly, and no part of it, therefore, was discontinued by the action of the selectmen of Meriden and the vote of the town approving such action.

Section 2078 provides a method for the discontinuance of highways which cannot be discontinued by selectmen under § 2056.

Judgment is advised for the defendants (appellees).

Costs will be taxed in this court in favor of the defendants.

In this opinion the other judges concurred.