# SUPPLEMENT.

49  591<br>61   46<br>49  591<br>72    9

CHARLES LA CROIX *vs.* THE COUNTY COMMISSIONERS OF
FAIRFIELD COUNTY.

The act of 1881 provides that the county commissioners in each county
shall constitute a court for the trial of causes for the revocation of
licenses granted in the county for the sale of intoxicating liquors, and
shall have sole and final jurisdiction of such causes; that accused
persons shall be cited to appear before them by complaint of any inform-
ing officer, accompanied by a summons signed by competent authority;
that upon proof of violation of the law with regard to the sale of such
liquors they may revoke the license; and that the chairman of the
board, while it is in session, shall have all the powers of justices of
the peace holding court to compel the attendance and secure the testi-
mony of witnesses. Held that this statute does not constitute the
county commissioners a court within the meaning of the constitution of
the state, and that it is not therefore unconstitutional in not providing
for a trial by jury in the first instance or on appeal.

The county commissioners being only a board and not a court, a writ of
prohibition can not be issued against them by the Superior Court, for
such a writ lies only against an inferior judicial tribunal.

Licenses granted for the sale of intoxicating liquors upon fees paid there-
for by the persons licensed, are not a contract between the state and the
persons licensed, and are not property in any constitutional sense.

They form a part of the internal police system of the state, are granted in
the exercise of the police power which is inherent in every sovereignty,
and may at any time be revoked by legislative authority.

APPLICATION for a writ of prohibition; brought to the
Superior Court for Fairfield County, and heard at the
September term, 1881, before *Hovey, J.* The case is fully
stated in the opinion.

*D. B. Lockwood* and *J. B. Hurlbutt,* for the plaintiff.

*J. H. Perry* and *F. L. Holt.* for the defendants.

HOVEY, J. The complainant was duly licensed by the

county commissioners of Fairfield County on the 2d day of November, 1881, to sell intoxicating liquors in his saloon on State street in the town of Westport, from that date until the 31st day of October, 1882; but the license was revocable in terms for any violation of the laws regulating the manufacture or sale of such liquors, as the statute requires.

The respondent Perry, in his capacity of prosecuting agent, on the 15th day of December, 1881, made complaint in writing to the commissioners charging the present complainant with violating the provisions of section 60 of chapter 9, title 20 of the General Statutes, by keeping open a certain room, place, inclosure, building and structure in the town of Westport in which it was reputed that intoxicating liquors were kept for sale, between the hours of 12 o'clock of the night of Saturday, November 19th, 1881, and 12 o'clock of Sunday night next following, and praying for that cause that the license of the present complainant be revoked. The complaint was accompanied by a summons, signed by competent authority, citing the present complainant to appear, if he saw cause, before the commissioners at their office in Bridgeport in said county on the 22d day of December, 1881, at 10 o'clock in the forenoon, then and there to show cause why the prayer of the complaint should not be granted and his license revoked. The summons having been duly served, the present complainant appeared before the commissioners at the time and place therein designated and filed a plea in abatement to the complaint, which was overruled. The respondent Perry, as prosecuting agent, thereupon offered evidence to prove the charge set forth in his complaint, to which the complainant herein objected, on the ground that the commissioners had no power or authority to determine the question whether he had violated the law relative to the manufacture or sale of intoxicating liquors, and that he was deprived of a trial by jury and had no right of appeal. The commissioners overruled the objection, admitted the evidence, and held that they were competent and had jurisdiction to try and determine the question whether the complainant herein had

violated the law, and if they found that he had, to so decide and revoke his license. The complainant thereupon presented the present application to this court, alleging that the commissioners were proceeding to try and determine said question, and that in doing so they were exceeding their jurisdiction and were holding plea of a matter whereof by law they had no cognizance, whereby the complainant was aggrieved; and praying that they, and the respondent Perry as prosecuting agent aforesaid, might be required to show cause to this court why a writ of prohibition should not be issued against them. A rule was accordingly granted and duly served, requiring the respondents to appear before this court on the first Tuesday of January, 1882, at 10 o'clock in the forenoon, and show cause why the prayer of the complainant should not be granted. At the time designated the parties appeared; and the respondents assigned for cause why a writ of prohibition should not issue against them, " that they have full power and authority to proceed in the manner alleged in the complainant's complaint, under and by virtue of the statute laws of the state of Connecticut relating to and regulating the sale of spirituous and intoxicating liquors, and especially part 1, chap. 14, page 268, of the General Statutes, and chapters 60 and 124 of the public acts of 1881."

The question therefore is, whether the commissioners have jurisdiction, under or by virtue of these statutes or either of them, of the complaint of the respondent Perry as prosecuting agent, and the authority to determine the truth of the charge therein made, and upon such determination to revoke the present complainant's license. There is no provision in part 1, chapter 14, title 16, page 268, of the General Statutes, which authorizes the commissioners to revoke a license for the sale of intoxicating liquors, for a violation of the law in the manner charged in the complaint; nor is there any provision conferring such authority in chapter 60 of the public statutes of 1881. There is a provision in that chapter that if any person licensed to sell intoxicating liquors shall violate any provision of the laws

in relation to such liquors, such violation shall, in addition to the penalty prescribed for said offence, work a forfeiture of his license and of all moneys that may have been paid therefor; but the tribunal to determine the fact which is to work the forfeiture is in no manner designated. If therefore the commissioners have jurisdiction of the complaint of the respondent Perry as prosecuting agent, and the authority to determine the truth of the charge therein made, and upon such determination to revoke the present complainant's license, they must derive them from chapter 124 of the public statutes of 1881, which contains the following provisions:—

"Sec. 1. The county commissioners of each county, while in session for the purpose, shall constitute a court for the trial of causes for the revocation of licenses for the sale of intoxicating liquors granted in the county; and shall have sole and final jurisdiction of such causes. All licenses hereafter issued shall be revocable in terms for any violation of the laws regulating the manufacture or sale of intoxicating liquors.

"Sec. 2. While so in session at their respective place or places of meeting in the county, the chairman of the board shall have all the power of justices of the peace holding court in their respective towns, to compel the attendance and secure the testimony of witnesses duly summoned before them. Said commissioners shall receive for such services the same fees and expenses as in other service for the county, and if they find it necessary to be in session for the purposes provided in this act any days in excess of the number limited by law, they may change the usual *per diem* compensation for such excess, notwithstanding such limitation.

"Sec. 3. Accused persons shall be cited to appear before the commissioners by complaint of any informing officer setting forth the offences charged, accompanied by a summons signed by competent authority, citing the accused to appear, if he see cause, before the commissioners at their place of meeting, on a given day and hour, to show reasons,

if any he has, why his said license should not be revoked; such process to be served by copy thereof left with the accused, or at his usual place of abode, at least six days before the day the same is made returnable, by a proper officer.

"Sec. 4. The fees of the officer serving the process and of the witnesses summoned shall be the same as in criminal causes, provided that in the opinion of the commissioners the prosecution was brought in good faith and upon probable cause. And the fees authorized in this section shall be taxed by the chairman of the commissioners and reported by him in writing to the county treasurer for record in a book provided for the purpose; and the said chairman shall, on his order, draw from the treasurer the gross amount so taxed in each cause and pay out the same to the persons to whom taxed; provided however, that in no event shall the total amount of costs taxed against the county treasurer in any one case exceed the sum of fifty dollars, and the fees of commissioners, prosecuting agents, witnesses and officers shall, if necessary, be scaled *pro rata* to such sums as shall make the aggregate not more than fifty dollars.

"Sec. 5. On the revocation of the license by the court of commissioners, the bond given by such person to the county when so licensed shall be put in suit by the treasurer of the county, and prosecuted in his name to final judgment for the benefit of the county, unless the county commissioners, for good reason, direct otherwise; and the reasonable expenses of such prosecution, audited by the chairman of the commissioners, shall be paid out of the county treasury."

Counsel for the present complainant, admitting, as they must, that this statute, if constitutional, gives to the county commissioners sole and final jurisdiction of the complaint of the respondent Perry as prosecuting agent, and the necessary authority to determine the truth of the charge therein contained, and upon such determination to revoke the complainant's license, insist that the statute is unconstitutional, because they claim that the General

Assembly have no power to constitute the county commissioners a court with jurisdiction of causes for the revocation of licenses, without giving to the parties who may be brought before them the benefit of a trial by jury or the right to have their judgments reviewed on error or appeal by a higher judicial tribunal.

There would be great force in this claim if the statute in question does constitute the county commissioners a court within the constitutional meaning of that term. The Constitution, art. 5, § 1, provides that "the judicial power of the state shall be vested in a Supreme Court of Errors, a Superior Court, and such inferior courts as the General Assembly shall, from time to time, ordain and establish; the powers and jurisdiction of which courts shall be defined by law." Under this provision the General Assembly cannot, it is clear, ordain and establish any other than inferior courts; nor can they confer upon such courts, when ordained and established, the powers and jurisdiction of a court of final resort in any cause or class of causes which they may authorize to be brought before them. An inferior court, according to the technical meaning of the term, is a court whose judgments, standing alone, are mere nullities, and in order to give them validity its proceedings must show jurisdiction. *Kemp's Lessees* v. *Kennedy*, 5 Cranch, 173; 10 Wheat., 192. But all courts from whose judgments an appeal or writ of error lies, are inferior courts in relation to the courts before which their judgments may be carried and by which they may be reversed, annulled or affirmed. *Ex parte Watkins*, 3 Pet., 205. It is in this latter sense that the framers of the constitution used the term "inferior courts." They meant thereby courts whose judgments could be reviewed and whose errors might be corrected, on error or appeal, by another and a higher tribunal. *Nugent* v. *The State*, 18 Ala., 521. But the General Assembly did not intend, by chapter 124 of the public statutes of 1881, to constitute the county commissioners an inferior court in the constitutional sense of that term. The word "court" is, indeed, used in the first and last sections

of that chapter; but it is apparent from the language of the other sections that it is used, not in its technical sense, but in the sense of the word "board," and was intended to have no other force or effect than the latter word would have had if it, instead of the word "court," had been employed. This is especially apparent from the language of the second section, which, as has been shown, provides that "while so in session" [that is, while the county commissioners are in session for the trial of causes for the revocation of licenses,] the chairman of the *board* shall have all the powers of justices of the peace holding court in their respective towns, to compel the attendance and secure the testimony of witnesses duly summoned before them. The General Assembly would not have given to the chairman of the board of county commissioners the powers which this section confers, if they had supposed they had constituted, or intended to constitute, the county commissioners a part of the judicial power of the state—such powers being in that case entirely unnecessary. For the General Statutes, tit. 19, ch. 11, § 1, provide that parties shall have process of subpœna to bring witnesses into court, and if any person upon whom a subpœna is served to appear and testify in a cause pending before any court and to whom one day's attendance and fees for travelling to court have been tendered, neglects or refuses to appear and testify, without excuse, he subjects himself to a forfeiture of five dollars and to the payment of all damage sustained by such neglect or refusal by the party aggrieved. And those statutes also provide that the court may issue a *capias* to arrest such witness and bring him before the court to testify. But if the commissioners were intended to constitute a board merely, and not a court, for the trial of causes for the revocation of licenses, the powers given to the chairman of the board for compelling the attendance and securing the testimony of witnesses on such trials, were not only proper but necessary. Again, if the General Assembly intended to constitute the county commissioners a court, they would not have omitted to make provision for their

appointment as judges of the court for the term prescribed by the constitution. The constitution provides that all judges of inferior courts, except those of the common pleas, district courts, courts of probate, and city courts, shall be appointed annually. But the statute in force in 1881, which provided that the county commissioners should hold their offices for three years, was allowed to remain and still remains unchanged. It may be added that if the legislature had intended to constitute the commissioners a court, they would, when referring to them in the statute, have given to them their constitutional title of judges, instead of their statutory title of commissioners.

It being thus shown that under the statute of 1881 herein before recited, the county commissioners are a board merely and not a court, a writ of prohibition cannot be issued against them, for such a writ lies only against an inferior judicial tribunal.

This conclusion renders unnecessary a consideration of the question whether it was competent for the General Assembly to confer upon the county commissioners, as a board, the powers and jurisdiction mentioned in section first of chapter 124 of the public statutes of 1881. But the question is one of equal importance with the one already considered; and the parties having requested an expression of my opinion upon it, in order, as I suppose, to save the expense of further proceedings before this court upon another application in a different form, I cannot justly refuse to comply with the request.

The present complainant insists that the General Assembly have no more power to confer the jurisdiction mentioned upon the county commissioners as a board, than they have to confer the same jurisdiction upon them as a court, because, he claims, that his license is a contract between him and the state, vesting in him the right from the 2d day of November, 1881, until the 31st day of October, 1882, to sell intoxicating liquors in his saloon at Westport, unless, during that period, he has violated or shall violate some provision of the laws in relation to such liquors, and shall

be convicted of such violation in due course of law. And he also insists that his license is property for which he has paid a valuable consideration and of which he cannot be deprived but by the judgment of a court of competent jurisdiction upon the verdict of a jury.

Questions kindred to this have been before the Supreme Court of the United States and the courts of several of our sister states; and although the decisions of the state courts are not entirely harmonious, there is a clear preponderance of authority in support of the doctrine that licenses like that of the complainant are not contracts between the state and the parties licensed, and are not property in any constitutional sense; that they are unlike an act of incorporation by which, in consideration of the supposed benefits to the public, certain rights and privileges are granted by the legislature to individuals, under which they embark their skill, enterprise and capital; and that their only effect is to permit persons to carry on a traffic which would otherwise be unlawful and criminal. They form, moreover, a part of the internal police system of the state, are granted in the exercise of the police power which is inherent in every sovereignty and cannot in any manner be alienated, and may at any time be revoked by legislative authority.

In the case of *Calder* v. *Kurby*, 5 Gray, 597, a license to sell intoxicating liquors had been granted for a certain period. The fee paid therefor was one dollar. Before the period had expired the license was annulled. It was urged upon the argument, in behalf of the plaintiff, that the license was a contract and within the protection of the constitution of the United States. But the court overruled the claim. Mr. Justice BIGELOW in giving the opinion says:—"The whole argument of the counsel for the plaintiff is founded on a fallacy. A license authorizing a person to retail spirituous liquors does not create any contract between him and the government. It bears no resemblance to an act of incorporation by which, in consideration of the supposed benefits to the public, certain rights and privileges are granted by the legislature to individuals, under which they

embark their skill, enterprise and capital. The statute regulating licensed houses has a very different scope and purpose. It was intended to restrain and prohibit the indiscriminate sale of certain articles deemed to be injurious to the welfare of the community. The effect of a license is merely to permit a person to carry on the trade under certain regulations and to exempt him from the penalties provided for unlawful sales. It therefore contained none of the elements of a contract. The sum paid for it was merely nominal; and there was no agreement, either express or implied, that it should be irrevocable. On the contrary, it is manifest that this statute, like those authorizing the licensing of theatrical exhibitions and shows, sales of fireworks and the like, was a mere police regulation, intended to regulate trade, prevent injurious practices, and promote the good order and welfare of the community, and liable to be modified and repealed whenever, in the judgment of the legislature, it failed to accomplish these objects."

The Supreme Court of New Hampshire, in the case of *The State* v. *Holmes*, 1 Chandler, 225, came to the same conclusion as the court of Massachusetts, upon the same course of reasoning. The Chief Justice, in giving the opinion, says:—"It is an essential ingredient of a legal license that it confers no right or estate or vested interest, but is at all times revocable at the pleasure of the party who grants it. Nor has the word any popular use which differs from the legal definition. In both the legal and the popular sense the term "license" implies no right or estate conveyed or ceded, no binding contract between parties, but mere license and liberty to be enjoyed as a matter of indulgence at the will of the party who gives the license."

The same doctrine is recognized and enforced by the Court of Appeals of the state of New York, in the case of *The Metropolitan Board of Excise* v. *Barrie*, 34 N. York, 657. The court in that case declare that licenses to sell intoxicating liquors are not contracts between the state and the persons licensed, giving to the latter vested rights, protected on general principles and by the constitution of the

United States against subsequent legislation; nor are they property in any legal or constitutional sense; that they have neither the qualities of a contract or of property, but are merely temporary permits to do what otherwise would be an offence against a general law; that they form a portion of the internal police system of the state; are issued in the exercise of its police powers, and are subject to the direction of the state government, which may modify, revoke, or continue them, as it may deem fit. The court in the same case also declare that the necessary powers of the legislature over all subjects of internal police, being a part of the general grant of the legislative power given by the constitution, cannot be sold, given away or relinquished.

The Court of Appeals of the state of Maryland, in the case of *Fell* v. *The State*, 42 Md., 71, hold the same doctrine. In that case the court say that "the legislature has power to prohibit the sale of spirituous or fermented liquors in any part of the state, notwithstanding a party to be affected by the law may have procured a license under the general license laws of the state, which has not yet expired. Such a license is in no sense a contract made by the state with the party holding the license. It is a mere permit, subject to be modified or annulled at the pleasure of the legislature, who have the power to change or repeal the law under which the license was granted."

In *Hirn* v. *The State of Ohio*, 1 Ohio St., 21, the plaintiff had been granted a license under the laws of that state to keep an inn, which permitted him to sell spirituous liquors for a certain period of time, and had paid therefor a substantial license fee. Before the expiration of that period the legislature passed an act repealing the law under which the license was granted and thereby revoked the license. The plaintiff contended that the legislature had no power to pass such an act. But the court said they were not disposed to question the power of the legislature in a matter of that kind, connected as it was with the public policy and domestic regulations of the state; that upon the ground of protecting the health, morals and good order of the commu-

nity, they were not prepared to say that the legislature did not possess the power to revoke such license. They added however that where there had been no forfeiture of the license by abuse or a violation of its terms, common honesty would require that the money obtained for it should be refunded in case of its revocation.

The doctrine of the cases of *Calder* v. *Kurby*, *State* v. *Holmes*, *Metropolitan Board of Excise* v. *Barrie*, and *Fell* v. *The State*, is strongly supported by decisions of the Supreme Court of the United States in the cases of *Beer Company* v. *Massachusetts*, 97 U. S. Reps., 25, *Patterson* v. *Kentucky*, id., 501, *Fertilizing Company* v. *Hyde Park*, id., 659, and *Stowe* v. *Mississippi*, 101 id., 814. Mr. Justice BRADLEY, in giving the opinion of the court in *Beer Company* v. *Massachusetts*, says:—" Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health and property of the citizen and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, *salus populi suprema est lex;* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion may no more be bargained away than the power itself." Again he says:—" All rights are held subject to the police power of the state. If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer.".

These authorities are sufficient to show that it was competent for the General Assembly, in the exercise of the police power belonging to the state, to prohibit entirely, or to authorize, upon such conditions as they saw fit, the sale

of intoxicating liquors. They saw fit to authorize the county commissioners of each county, upon the recommendation of the selectmen of any town voting in favor thereof, to license suitable persons to sell such liquors in the town so voting, from the date of the license until the 31st day of October next following; upon condition however that the persons licensed should observe all the laws of the state in relation to intoxicating liquors, and that if they violated any of those laws such violation should work a forfeiture of their licenses; and upon the further condition that all licenses should be revocable in terms for any violation by the persons licensed of the law regulating the manufacture and sale of intoxicating liquors, and that the county commissioners should constitute a board for the trial of causes for the revocation of such licenses, and that their jurisdiction in such causes should be sole and final. The license of the present complainant was granted to and accepted by him upon those conditions. It does not, therefore, become him to say that the county commissioners, in proceeding to hear and determine the complaint of the respondent Perry as prosecuting agent, were exceeding their jurisdiction and holding plea of a matter whereof by law they have no cognizance, or that the statute under which they were so proceeding violates any of the present complainant's constitutional rights.

In the case of *The People ex rel. Beller* v. *Wright*, 3 Hun, (N. Y. Supreme Court R.,) 306, the board of excise for the village of Delhi in the state of New York, under statutes almost identical in terms with our own, granted to the relator a license to sell ale and beer in that village for a certain period. The license was revocable for a violation, by the relator, of any of those statutes; and the board of excise were required, upon the complaint of any residents of the village charging any such violation, to summon the relator to appear before them and show cause why his license should not be revoked; and to revoke the license if they became satisfied of the truth of the charge contained in the complaint. The relator was summoned, upon the

complaint of four residents of the village of Delhi charging him with a violation of the statutes referred to, to appear before said board and show cause why his license should not be revoked. He appeared and objected to the right of the board to proceed and to their administering the oath to the complainants' witnesses, upon the ground that his license was a contract and vested in him the right to sell ale and beer during the period mentioned in it unless he violated some provision of the laws regulating the sale thereof; and that upon the question whether he had been guilty of any such violation he was entitled to a trial by jury. But both objections were overruled; and the board proceeded, and, after hearing, revoked the license. The matter then went before the Supreme Court; and there the proceedings of the board were sustained. HARDIN, J., in a very brief opinion, says:—" The relator was not entitled to a trial by jury. The statute under which he received his license expressly authorizes and empowers the board of excise, when they shall become satisfied that any such person or persons has or have violated any of the provisions of the act, to revoke, cancel and annul the license of such person or persons. The license was merely a permit given to the relator under which he was authorized to sell ale or beer. It does not give him any property or vested right to enjoy the privileges thereof beyond the time when the board should become satisfied that he had violated any of the provisions of the acts of 1857, 1869, 1870 or 1873. The board had no power to inflict a penalty upon him for violations of the law. They were simply authorized to revoke the permit theretofore given him in respect to ale or beer."

The New York Court of Appeals arrived at the same conclusion in the case of *The People ex rel. Presmeyer* v. *The Board of Commissioners of Police and Excise*, 59 N. York, 92. In that case the relator had obtained a license from the respondent board for the sale of intoxicating liquors in the city of Brooklyn under the provisions of the statutes referred to in the case last cited. Before the license expired complaint was made to the superintendent

of police against the relator for keeping open his saloon on Sunday for the sale of beer and for selling beer therein on that day, in violation of the statutes. The respondent board thereupon summoned the relator to show cause before them why his license should not be revoked, as prescribed by section 8 of chapter 549 of the laws of New York of 1873. The relator appeared before the board and protested against further proceedings, on the ground that the board had no jurisdiction, and that the complaint preferred alleged no violation of the excise law. These objections were overruled by the board; and thereupon the relator filed a motion in the Supreme Court of the Second Judicial Department of New York, at a special term, for a writ of prohibition, to compel the board to desist from proceeding to revoke the relator's license. The motion was there denied. The case then went, to the Supreme Court of the same judicial department at the general term, and there the order of the special term denying the motion was affirmed. The relator then took the case to the Court of Appeals, and there the order of the general term was affirmed. GROVER, J., in giving the opinion of the court, in which all of the judges concurred, said:—" Section 8 of chapter 549, Laws of 1873, page 859, among other things provides that the board of excise of any city, town or village may, at any time, and upon the complaint of any resident of said city, town or village shall, summon before them any person or persons licensed as aforesaid, and if they shall become satisfied that any such person or persons has or have violated any of the provisions of this act or of the acts hereby amended, they shall revoke, cancel and annul the license of such person or persons, which they are hereby empowered to do; and when necessary, to enter upon the premises and take possession of and cancel such license. Upon an inquiry, the said board, or the party complained of, may summon, and the said board may compel the attendance of witnesses before them and examine them under oath. The acts referred to are the act regulating the sale of intoxicating liquors passed April 11th, 1870, and the act entitled an act to suppress intem-

perance and to regulate the sales of intoxicating liquors, passed April 16th, 1857. These latter acts embrace the statutes now in force in regard to the sale of intoxicating liquors and for licensing the same. It will be seen that section 8 authorizes the board of excise, upon their own motion, whenever they suspect any person having a license for the sale of intoxicating liquors of having violated any of the provisions of the acts in question, to summon such person before them to inquire into the fact of such violation, and if they find him guilty, cancel his license; and upon the complaint of any resident of any city, &c., that such person has violated any such provision, commands them to summon such party and make inquiry as to the fact complained of. Complaint was made to the board by a sergeant of the police of Brooklyn, that the appellant, in substance, kept his saloon open upon Sunday for the sale of, and sold beer therein. Though this is not formally stated in the complaint, yet the facts stated therein show, if true, that this was done there at that time. That keeping open the saloon on that day for the public sale of beer for a beverage was a violation of the statute requires no argument."

After stating that it was insisted by counsel for the appellant that section 8, *supra*, was repealed as to the city of Brooklyn, and holding that it was not, but was in force, the learned judge proceeds as follows:—"The counsel further insists that section 8 is unconstitutional, for the reason that it authorizes the conviction of a party of a crime without a trial by jury. But it authorizes nothing more than an inquiry into and determination of the question whether the party licensed continues to be a suitable and proper person to sell intoxicating liquors, the statute itself determining that a violator of the excise laws, while holding a license, is not such a person. That the power to license the sale of intoxicating liquors and to cancel such license when granted is vested in the legislature has been determined by this court. *Metropolitan Board of Excise* v. *Barrie*, 34 N. York, 657. The mode and manner rests in the discretion of that body."

La Croix *v.* County Commissioners.

This decision and the other decisions to which I have referred, satisfy me that chapter 124 of the public statutes of 1881 violates no constitutional rights of the complainant or of any other citizen, and should therefore be held valid. It necessarily follows that the rule granted in this case must be discharged.