HERMAN E. MALMO'S APPEAL FROM COUNTY COMMIS-
SIONERS.

Third Judicial District, Bridgeport, April Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 3053 of the General Statutes as amended by Chap. 117 of the
Public Acts of 1889, p. 66, provides that the county commissioners
may license "suitable persons" to sell intoxicating liquors in "suit-
able places." *Held*, upon appeal from the refusal of the county com-
missioners to grant a license, upon the ground that the applicant or
place was not "suitable," that the judgment of the Superior Court
finding the person and place to be suitable vacated the action of the
commissioners and established the requisite statutory qualifications
for a license; but that inasmuch as the commissioners were invested
with a discretion to refuse a license even when all the statutory qual-
ifications existed, *mandamus* would not lie to compel them to issue
a particular license.

The question of the suitability of person and place is so far judicial in its
nature that it may constitutionally be made the subject of an appeal
to the Superior Court; but the discretionary powers and duties
vested in the commissioners for the enforcement of the existing law
are administrative or executive functions, which the statute does
not attempt to impose upon the Superior Court.

Whether the commissioners might not be liable to *mandamus* in case of
an arbitrary, capricious refusal to license, *quære.*

Argued April 21st—decided June 1st, 1899.

VOL. LXXII—1                                        (1)

APPLICATION for a writ of *mandamus* requiring the County Commissioners of Fairfield County to grant a liquor license to the applicant, brought to the Superior Court in Fairfield County and reserved by that court, *Ralph Wheeler, J.,* upon the respondent's motion to quash the alternative writ, for the consideration and advice of this court. *Judgment quashing alternative writ advised.*

The plaintiff on December 15th, 1898, applied to county commissioners for a license to sell intoxicating liquors at 152 Washington street in the town of Norwalk. Sundry tax-payers remonstrated, because the place designated was not a suitable place to be so licensed. February 4th, 1899, the commissioners refused to grant the license on the ground that the place was not suitable. February 16th, 1899, the plaintiff, pursuant to Chap. 175 of the Public Acts of 1893, appealed to the Superior Court; neither the county commissioners nor the remonstrants, nor any person except the appellant, appeared. The Superior Court, after hearing the appellant and his witnesses, rendered judgment as follows:—

"It is adjudged that the said decision of the said county commissioners, made on the 4th day of February, 1899, as appealed from, be, and the same is hereby vacated and reversed; that said Herman E. Malmo, appellant, is a suitable person to whom a license to sell spirituous and intoxicating liquors may be granted; that said location in the said city of South Norwalk, within said town of Norwalk, is a suitable place at which to issue a license for the sale of spirituous and intoxicating liquors; that a license must be granted and issue to the said Herman E. Malmo, the appellant, and that this cause be, and the same is hereby remanded to the said county commissioners for action, in accordance with the judgment of the court herein; and it is ordered and adjudged that the said county commissioners forthwith issue to said Herman E. Malmo a license to sell spirituous and intoxicating liquors at said place in said city of South Norwalk, within said town of Norwalk."

On March 28th, 1899, the clerk of the Superior Court transmitted to the county commissioners a duly certified copy

of this judgment. On April 5th, 1899, the plaintiff made demand on the county commissioners for a license, and tendered the license fee and offered a sufficient bond as required by law; but the commissioners refused to grant any license to the plaintiff and still refuse to issue said license.

The alternative writ recited these facts in detail, including a copy of the proceedings from the first application for a license to the judgment of the Superior Court on appeal, and also averred that "said applicant has complied with all requirements of the law, and is legally entitled to said license, and has been entitled thereto since the said 5th day of April, 1899."

The motion to quash assigns the following reasons: "1. The respondents were not parties to the proceedings referred to, and therefore were not in any way bound by the judgment referred to in paragraph 7 of said alternative writ. 2. The questions presented to said Superior Court for its determination by the so-called appeal referred to in paragraph 4, and the following paragraphs, and set forth in Exhibit A, were not judicial in their nature, and said court had no jurisdiction under § 1, Art. fifth, of the Constitution of Connecticut, or otherwise, to hear or determine any questions not of a judicial nature. 3. Said Superior Court had no power or authority to vacate or reverse the decision of the respondents as county commissioners of Fairfield county, made on February 4th, 1899, in refusing to grant to said Malmo the license applied for, or to adjudge that a license must be granted and issue to said Malmo. 4. Said Superior Court had no power or authority under the Constitution of Connecticut to vacate or reverse said decision, or to adjudge that a license must be granted and issue to said Malmo. 5. Said Superior Court had no power or authority under Chap. 175 of the Public Acts of 1893, or of any other statute, to vacate or reverse said decision, or to adjudge that a license must be granted and issue to said Malmo. 6. Said Superior Court had no power or authority to render any judgment in said proceedings, except with an advisory effect, so far as the respondents were concerned. 7. Said Superior Court had no power or authority to remand said cause to the respondents, as the

county commissioners for Fairfield county, with instructions to issue a license to said Malmo as directed in said judgment. 8. Said Superior Court had power and authority on said so-called appeal only itself to issue a license as requested by said Malmo, and could not direct the respondents to issue such a license."

*George P. Carroll*, for the respondents.

*Stiles Judson, Jr.*, and *John J. Cuneo*, for the applicant.

HAMERSLEY, J. The defendants' main contention is that licensing the sale of intoxicating liquors is an executive function which cannot be exercised by the Superior Court. The incapacity of the judicial department, under our Constitution, to exercise functions that are essentially and distinctively executive or legislative, unless as incident to the exercise of some legitimate judicial power, was so deliberately considered and settled in the recent case of *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, and the application of this constitutional prohibition was then so fully discussed, that we deem it unnecessary to say anything further on the subject now; the present case must be controlled by that decision.

There was in former times no clear distinction between courts as a depository of judicial power, and courts as the servants of the executive power; but this confusion was confined largely to the highest tribunal in which supreme legislative, executive and judicial power were united, and to inferior courts whose position as judicial or executive bodies was not infrequently difficult to determine.

The Constitution radically changed this. Certain courts were established and authorized, the tenure of office and mode of appointment of their judges prescribed, and in these courts or "magistracy" the judicial power of the State was vested, and they were excluded from the exercise of legislative and executive power.

It does not, therefore, follow that the exercise of a particular function by a court—especially by an inferior court—during

the period of confusion, even if continued afterwards, neces- sarily indicates such function as pertaining to the judicial power. It is, however, true that a particular function may be so near the border line of judicial power that its definition calls for subtle distinctions and its nature depends to an extent on the purpose and manner of its use; and in respect to such a function its long association with judicial action may be decisive of its character, so far at least as to justify its treatment as being, according to circumstances, either within the judicial or executive power. A constitutional prohibition involved in the declaration of a fundamental princi- ple of government, cannot be treated from the narrow stand- point of mere statutory construction; it controls the substance rather than the form of legislation; it speaks with an ever present authority which is not modified by the fact of occa- sional violations overlooked or condoned; and should not be invoked unless the principles on which it rests are actually concerned.

In *Hopson's Appeal*, 65 Conn. 140, 146, we stated that the licensing of persons to sell intoxicating liquors is a matter which the legislature may properly commit to either depart- ment of government. When, however, it is treated as a judi- cial function, the purpose and manner of its exercise cannot be, in all respects, the same as when it is treated as a purely executive function; and the power may be committed to courts in such manner and for such purpose as to pass the limits of judicial power. In *Hopson's Appeal* we did not con- sider the power of the legislature to commit to the Superior Court the licensing of persons to sell intoxicating liquors in the manner such power is committed to county commissioners by the statute concerning " Intoxicating Liquors." That question was not involved. We were then considering the power of this court to review the action of the Superior Court in deciding, on an appeal from the county commissioners, this question: Is the appellant, or his place of business, " suit- able " for a license within the meaning of § 3053 of the Gen- eral Statutes? We held that the legislature might commit the matter of such licensing to the courts, and therefore the

question was not so exclusively of an executive nature that the Superior Court for that reason could not determine it upon appeal, and further held that while the question of suitability was one which the court might decide upon appeal, yet in reaching its result the court exercises that kind of judicial discretion which is not the subject of review in this court; that this element of discretion is inherent in the question of statutory suitability, which the county commissioners must find in order to issue a license, and that the nature of the question is not altered when it is brought before the Superior Court by appeal. To this extent *Hopson's Appeal* is affirmed in *Norwalk Street Ry. Co.'s Appeal, supra,* where it is held that "appeals" allowed by various statutes from the action of administrative and legislative boards are not appeals in the sense of a transfer of jurisdiction from one court to another, but that such statutes must be construed as providing a process, under the misleading name of appeal, for invoking the judicial power to determine a legal injury complained of, or the legality of an act done by the officers of another department.

For these reasons we cannot sustain the defendants' main contention; nor their further claim that the Act of 1893, in so far as it allows an appeal to an applicant to whom a license has been refused, is unconstitutional. *McCrea* v. *Roberts,* 43 Atl. Rep. (Maryland Court of Appeals) 39.

The defendants also claim that the Superior Court had no authority, under existing statutes, to adjudge that a license must be granted and issued to said Malmo. This depends first and mainly upon the question: Have the county commissioners a discretion in refusing a license, independent of the judicial discretion involved in deciding whether an applicant and his place of business are "suitable" within the meaning of the statute? The latter may be brought to the Superior Court for review by a proper process; the judicial control of the former presents a different question.

For more than 250 years we have treated the business of selling intoxicating liquors as one subject to legislative regulation and prohibition; and until 1854, the selection or

appointment of persons for that purpose was in general committed to legislative or executive bodies, while the determination of the fitness or suitability, in view of the statutory regulations, of a person so selected, was treated as a judicial question and committed to the courts. At first the retailing of liquors was confined to innkeepers. In 1644 each town was required to select persons for that service, and the persons so chosen were presented to two magistrates "that they may be judged meet for that employment." 1 Col. Rec. 104, 154, 533; 4 id. 436. In 1719 the selection of licensees was vested in the civil authority, and the licensing of such persons, upon a judicial determination of their fitness, was vested in the County Court. The substantial provisions of this statute remained in force until 1854. 6 Col. Rec. 156; Rev. 1750 (Ed. 1784), p. 129; Comp. 1808, p. 640; id. 1854, p. 812. During this period, covering a century of practice under a system permitting the indiscriminate use of executive and judicial power, some slight variations from the plan involved in the Act of 1719 were made. But we think the legislation as a whole recognizes a distinction between the purely executive act of appointment at discretion, and the judicial or *quasi*-judicial act of deciding on the fitness of a person in view of statutory regulations, and that it does not fairly establish even a practice of judicial licensing, unless as the result of a judicial finding. From 1854 to 1872 this business was wholly forbidden by law. In again adopting the system of regulation in 1872, the legislature rejected the former combination of executive appointment and judicial confirmation. It adopted a somewhat difficult scheme of police regulation and committed the main powers on which its efficient execution must depend, to the county commissioners, a purely administrative board (*Underwood* v. *County Commissioners*, 67 Conn. 411, 416), including the power of granting or refusing licenses at discretion. *Batters* v. *Dunning*, 49 Conn. 479. Their discretion in granting licenses was regulated and defined by statute. It was at first limited mainly by the prohibition of the appointment of any one not recommended by the selectmen, and not found to be a

"suitable" person. This word "suitable" as here used had a settled meaning indicating a finding of a judicial nature. *Smith's Appeal*, 65 Conn. 135, 138. Subsequently different and various statutory provisions were made, limiting their discretion in granting a license; and the Act of 1893, in providing a process by which the court might decide upon the nature and effect of these statutory limitations, modified their practical discretion in granting licenses, by enabling the court to give effect to the law confining their power to license within the lines of statutory definitions.

On the other hand, the statute contains no limitation on the power of the commissioners to refuse a license. There may be a duty implied to license some one; but there is nothing which can properly be construed as imposing a legal duty to license any particular person. The licensing or appointment of a particular person is an executive act incident and essential to their administration of the law. For this purpose they are given powers and furnished instructions not readily available to a court; such as the right to enter a licensed place at any time; to appoint agents who shall diligently inquire into the violations of the law and report monthly to the commissioners; to determine the amount of a license fee in certain cases; and the requirement that a female licensee shall be "known to the county commissioners to be of good repute," a matter hardly within the judicial knowledge of a court. Indeed, the evident purpose of existing legislation is to make the county commissioners responsible for the conduct of this business, which the legislature for nearly twenty years treated as a public nuisance, and still treats as a dangerous business which no one has an unqualified right to carry on; and to this end it vests in them the appointment of such number of persons, and such persons, and, to a limited extent, upon such terms as they shall judge necessary to the proper execution of the law. With the wisdom of such legislation the court is not concerned; it can only administer the law as it is. When the law says: The county commissioners "may license for a period, etc., suitable persons to sell, etc., in suitable places, etc., in the manner

hereafter provided" (§ 3053 as amended by Public Acts of 1889, p. 66), the power of appointment is given to the commissioners limited by the conditions of suitable persons, suitable places and other statutory requirements; but no duty is imposed upon them to appoint every one within the range of their power who may apply. Every applicant for an office (and a licensee assumes the performance of *quasi*-public duties, *Smith's Appeal, supra*, p. 139) does not have a legal right to the appointment because he may possess the legal qualifications; still less does an applicant for such license have a legal right to its issue; he has not even an unqualified right to its continuance when granted and paid for. *La Croix* v *County Commissioners*, 49 Conn. 591.

The Act of 1893 authorizing a process for invoking the judicial power to control the action of the commissioners, so far as that action may violate the statutory limitations under which they act, does not repeal this power of appointment vested in the commissioners; nor does it attempt to transfer the power to the Superior Court. Such transfer would imply the transfer of other powers given by the statute as incident to the power of appointment, which are deemed necessary for its proper exercise but which are impracticable for a court to wield. Upon an appeal, the suitability of person, of place and other statutory conditions to the issue of a license, are brought before the court, and its judgment as to these matters is binding on the commissioners.

So in this case, the court acted within its jurisdiction in finding that the applicant was a suitable person, that the place was a suitable place, and in vacating the action of the commissioners in refusing a license because the place was not suitable. It then became the duty of the commissioners to act upon the application as one wholly free from any legal limitation upon their power to grant.

What remedy there may be in case they should abuse or corruptly use their power in refusing to grant a license adjudged free from all legal objections, is a question not before us. Misconduct is not to be presumed. The commissioners are bound to act on the present application in accordance

with the judgment of the court, upon all questions of legal qualification; and the applicant is not debarred by the Act of 1893, p. 370, from making a second application to sell at the same place within the license year. But the Superior Court did not act within its jurisdiction in adjudging that a license must be granted and issue to the plaintiff, and that the county commissioners forthwith issue such license; that portion of the judgment is void. Upon appeal the court may vacate any license when the statutory conditions to its issue do not exist; but it cannot issue nor command the issue of every license where such conditions do exist.

The legislature may alter the law and give to every citizen a legal right, upon complying with prescribed conditions, to a license to sell intoxicating liquors; but such alteration would involve the abandonment of a main principle underlying the present legislation, and cannot be inferred from the Act of 1893 authorizing appeals.

The claim set forth in the fifth reason assigned for quashing the alternative writ, that the Superior Court had no power under existing statutes to adjudge that a license must be granted and issue to the plaintiff, is sufficient to sustain the motion to quash.

The Superior Court is advised to quash the alternative writ.

In this opinion the other judges concurred.