### THE CITY OF NORWALK *vs.* THE CONNECTICUT COMPANY (APPEAL OF THE CITY OF NORWALK FROM THE PUBLIC UTILITIES COMMISSION).

Third Judicial District, Bridgeport, April Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

An obligation to build and maintain a certain bridge implies the right or power to build it.

The building of a new highway bridge adapted to changed conditions, but which merely takes the place of one that has become unsafe for public travel, is a "reconstruction" of the old bridge within the meaning of that word as used in chapter 207 of the Public Acts of 1911, empowering the Public Utilities Commission to determine what portion of the expense of "such repair, strengthening or reconstruction shall be borne" by a street-railway company using the bridge.

The jurisdiction of the Public Utilities Commission attaches, under the terms of said Act, where the parties fail to agree either as to the necessity or character of the proposed reconstruction, or as to the apportionment of the expense.

The determination of what constitutes an equitable apportionment of the expense of repairing, strengthening or reconstructing a highway bridge, as between a city and street-railway company, is one of those *quasi*-judicial matters which lies so near the border line separating the judicial from the administrative functions of constitu-

Norwalk *v.* Connecticut Co.

tional government, that it may properly be committed by the legislature either to judicial or executive officers, or, as in the present case, to the Public Utilities Commission in the first instance, with an appellate jurisdiction in the Superior Court.

Upon an appeal to that court under the provisions of chapter 128 of the Public Acts of 1911, not only the legality, but also the expediency and propriety, of the order of the Commission, are re-examinable (§ 31), provided these matters are fairly presented by the reasons of appeal required by this section.

Reasons of appeal which directly challenge the equity of the apportionment made by the Commission, are sufficient to require the Superior Court to re-examine the propriety of the order.

Neither the Public Utilities Commission, nor the Superior Court on appeal from its orders, sit as a judicial tribunal engaged in the trial of a civil action; neither is bound by the technical rules respecting the admissibility or relevancy of evidence; and with reference to the present question, each sits to receive aid in the formation of a personal judgment as to what is an equitable apportionment of the expense under all the circumstances.

Upon an appeal from an order resulting from the exercise of a purely executive function, the only question which the appellate court can inquire into is whether the original tribunal acted illegally, or exceeded or abused its powers.

Argued April 23d—decided July 17th, 1914.

APPEAL by the plaintiff from an order of the Public Utilities Commission apportioning the cost of a bridge over the Norwalk River, brought to the Superior Court in Fairfield County where a demurrer to the appeal and reasons of appeal was sustained, *Curtis, J.*, from which the plaintiff appealed. *Error and cause remanded.*

The legislature, by a Special Act in 1911 (16 Special Laws, p. 490), authorized the town of Norwalk, through its bridge committee, to construct a bridge across the Norwalk River to replace an existing bridge on which was laid a single track of the Connecticut Company. Subsequently the city of Norwalk was incorporated as the successor of the town. The particular type, style, and dimensions of the new bridge were determined by the bridge committee under the authority of the Special Act, and a contract for the construction of

the bridge was awarded. The city of Norwalk, through its bridge committee, then presented a petition to the Public Utilities Commission, pursuant to chapter 207 of the Public Acts of 1911, p. 1486, representing that the old bridge was unsafe for public travel, and that it was unable to agree with the defendant, the Connecticut Company, as to the type of rail and number of tracks to be laid upon the new bridge, and also as to the proportion of the expense of the new construction that should be borne by the defendant, and asking the Commission to determine these matters.

The petition was duly heard, and the Commission filed a report showing that the parties had appeared with their witnesses and were fully heard, and ordering that the Connecticut Company should lay two tracks across the new bridge, with an approved type of grooved rail, and should pay $16,614 as its equitable portion of the expense of the construction of the bridge.

The city of Norwalk appealed to the Superior Court, under the authority of §§ 29 to 31 of the Public Utilities Act (Public Acts of 1911, Chap. 128, p. 1396), from so much of the order of the Commission as determined the amount to be paid toward the construction of the bridge by the Connecticut Company. The appeal sets forth the petition, the action of the Commission, consisting of a statement of facts, the claims of the parties, the reasons given by the majority of the Commission for their conclusions, and the order, of which the substance has been above stated, together with a memorandum of dissent by one of the Commission as to the rule adopted by the majority in determining the amount of the apportionment, and as to the amount so determined. To this appeal, and to the reasons of appeal included therein, the defendant demurred, and from the judgment of the Superior Court sustaining the demurrer and dismissing the appeal, this appeal is taken.

*John J. Walsh* and *Edward J. Quinlan,* with whom was *Edwin L. Scofield,* for the appellant (plaintiff).

*Harry G. Day* and *Benjamin I. Spock,* with whom was *Norman S. Buckingham,* for the appellee (defendant).

BEACH, J. The first ground of the demurrer to the appeal is that it does not appear, nor is it alleged, that the city of Norwalk has, or ever had, any power to build the new bridge. While it is true that the petition is defective in not specifically alleging that the Act of consolidation and incorporation of the city of Norwalk was approved by the electors of the town, it does appear from the appeal that the city of Norwalk was a party to the proceedings before the Commission, and that it is bound by law to construct and maintain the new bridge. The language of § 29 of the Public Utilities Act is that any city aggrieved by an order of the Commission in any matter to which "it was or ought to have been made a party may appeal therefrom to the Superior Court," etc. This ground of demurrer to the appeal is not well taken.

The second ground of demurrer is that the provisions of chapter 207 of the Public Acts of 1911, p. 1486, have no application to the bridge in question. The argument is that the bridge is a new bridge, and that, although the Act requires a street-railway company, under the conditions stated, to pay an equitable part of the expense of constructing a new bridge, it nevertheless omits to give the Commission authority to apportion the cost of a new bridge, but only gives authority to apportion the cost of repairing, strengthening, or reconstructing an old bridge.

This point is too fine for practical use in the construction of the statute. The word "reconstruction," as distinguished from repair and strengthening, means

rebuilding. It cannot be limited to an exact reproduction of the original bridge. Some latitude must be allowed for present and prospective changes in highway and waterway traffic, and for the expression of architectural design. Similar objections were made when the former board of railroad commissioners exercised their authority to alter the location of existing highways in eliminating grade-crossings. The claim was then made that they had exceeded their powers by laying out new highways, as distinguished from relocating highways. It was held, in answer to this claim, that while the commissioners had no power to lay out a new highway as an independent matter, they did have power to lay out what was in one sense a new highway, but was in fact a substitute for the old, discontinued, highway. *State's Attorney* v. *Branford*, 59 Conn. 402, 407, 22 Atl. 336; *Fairfield's Appeal*, 57 Conn. 167, 171, 17 Atl. 764; *Meriden* v. *Bennett*, 76 Conn. 58, 66, 55 Atl. 564. So, in this statute, the word "reconstruction," as used in the latter part of the Act, is evidently large enough to include a reconstruction adapted to changed conditions, though the result is in one sense a new bridge, provided it is in fact a substitute, in point of highway traffic, for the old.

It is also claimed that the jurisdiction of the Commission is confined by the statute to cases where the parties have disagreed, or at least have had an opportunity to disagree, as to the necessity and character of the proposed reconstruction. But the letter of the statute is satisfied if the parties disagree either as to the necessity or character of the reconstruction, or as to the apportionment of the expense. In this case the parties disagreed, not only as to the apportionment of the expense, but also as to the number of tracks and type of rail to be laid across the bridge, and the double track ordered by the Commission involves a substan-

tial change in the strength and expense of the reconstruction as compared with what would have been sufficient if a single track had been ordered. For these reasons we think that the objections to the jurisdiction of the Public Utilities Commission are not well founded.

The remaining paragraphs of the demurrer question the jurisdiction of the Superior Court, first, on the ground that the whole subject-matter is beyond the constitutional jurisdiction of the court because its determination calls for the exercise of executive as distinguished from judicial functions; and second, on the narrower ground that the reasons of appeal do not present any issues properly cognizable in the Superior Court under the provisions of the Public Utilities Act respecting appeals to that court.

As to the constitutional question, we said in *Spencer's Appeal*, 78 Conn. 301, 305, 61 Atl. 1010: "The question is not one new to our deliberations. None other, perhaps, has been more frequently before us in recent years, or had a more deliberate consideration and exhaustive discussion." It is unnecessary to reopen that discussion. The precise issue before us is a comparatively narrow one; namely, whether the Superior Court has jurisdictional power to revise the determination of the Public Utilities Commission, made pursuant to chapter 207 of the Public Acts of 1911, as to what is an equitable portion of the expense of repairing, strengthening, or reconstructing a bridge, to be borne by a street-railway company operating its tracks over it. It is apparent that the apportionment of the expense of such a bridge between the municipality and the street-railway company is not a purely administrative matter in the same sense as the question what type of rail, or how many tracks, should be laid over it when reconstructed. We think such an apportionment of expense is one of those matters which lies "so near

the border line of judicial power that its definition calls for subtle distinctions and its nature depends to an extent on the purpose and manner of its use." *Malmo's Appeal,* 72 Conn. 1, 5, 43 Atl. 485. On the one hand, it is in practical effect a money judgment, though not enforceable by execution without the aid of the Superior Court. Public Utilities Act, § 11. On the other hand, it is so intimately connected with the purely administrative question of the character of the particular repair, strengthening, or reconstruction, that its determination has been properly left to the discretion of the Public Utilities Commission. Like the selection, under statutory limitations, of persons suitable to be licensed to sell intoxicating liquors, it is competent for the legislature to commit such apportionment either to judicial or executive officers, as may be found necessary. *Hopson's Appeal,* 65 Conn. 140, 146, 31 Atl. 531. There is, therefore, no valid constitutional objection to the appellate jurisdiction of the Superior Court in the premises.

The next question is as to the extent of such appellate jurisdiction, and that depends on the statute. The Public Utilities Act provides as follows: "Sec. 31. PROCEDURE. QUESTIONS REVIEWED. Each appeal shall be brought by a complaint in writing, stating fully the reasons therefor. . . . Said court shall hear such appeal and re-examine the question of the legality of the order, authorization, or decision appealed from, and the propriety and expediency of such order, authorization, or decision, in so far as said court may properly have cognizance of such subject, either by itself or a committee, and shall proceed thereon in the same manner as upon complaints for equitable relief; and the decision of such court, subject, however, to review on appeal to the Supreme Court of Errors on questions of law, shall be final and conclusive upon the parties."

This section appears to have been drawn with careful regard to the decisions of this court as to the nature of so-called appeals from administrative tribunals, and as to the limitations on the jurisdiction of our courts in passing on such appeals. It recognizes the fact that such appeals are in the nature of original applications to the Superior Court, by directing them to be proceeded with in the same manner as complaints for equitable relief. *Malmo's Appeal,* 72 Conn. 1, 6, 43 Atl. 485; *Moynihan's Appeal,* 75 Conn. 358, 360, 53 Atl. 903; *Coles' Appeal,* 79 Conn. 679, 680, 66 Atl. 508. It also recognizes the fact that when such appeals are taken from orders passed in the exercise of a purely executive function, the only question which the court can inquire into is whether the tribunal in question has acted illegally, or has exceeded or abused its powers. On the other hand, the legislature has carefully attempted to confer on the Superior Court, "in so far as said court may properly have cognizance of such subject," the right and duty of re-examining the expediency and propriety of orders appealed from. We think there is a limited class of orders to which this language of the statute may properly apply. There seems to be no reason why a *quasi*-judicial function—that is, one which may constitutionally be exercised either by the courts or by an administrative tribunal—may not, by a plain expression of legislative intent, be committed to an administrative tribunal in the first instance, and then, at a second stage of the proceedings, to the courts for the purpose of review.

The order apportioning the expense of this bridge was passed in the exercise of such a *quasi*-judicial function, and we think that § 31 of the Public Utilities Act properly requires the Superior Court, on an appeal therefrom, to re-examine, not only the legality of the order, but also its expediency and propriety. The

reasons of appeal required by the statute must, of course, fairly present the questions desired to be reviewed; and the remaining question is whether any of the reasons of appeal are sufficient to properly invoke the appellate or correctional jurisdiction of the Superior Court.

Some of the reasons of appeal are open to the objection of treating the Public Utilities Commission as if it was a court engaged in the trial of a civil action. That is not so. Neither the Commission, nor the Superior Court on appeals from its orders, is bound by the technical rules respecting the admissibility or relevancy of evidence. So far as this case is concerned, they sit to receive aid in the formation of a personal judgment as to what is an equitable apportionment of the expense, under all the circumstances. *Hopson's Appeal*, 65 Conn. 140, 147, 148, 31 Atl. 531. There are, however, reasons of appeal, such as the seventh, eighth and ninth, which directly question the equity of the apportionment made by the Commission, and these are sufficient to require the Superior Court to re-examine the propriety of the order.

There is error, and the cause is remanded with direction to overrule the demurrers to the reasons of appeal.

In this opinion PRENTICE, C. J., THAYER and RORA-BACK, Js., concurred.

WHEELER, J. I concur in the opinion, except in its holding that the apportionment of the expense of the bridge is a matter on the border line between the judicial and administrative power.

I am of the opinion that the apportionment of the expense of the bridge in its subject-matter is judicial in its nature and in no sense administrative, and, therefore, the appeal from the order making such apportionment brings up the matter for a hearing *de novo*.