For the reasons stated above the appeal is dismissed.

STATE EX REL. AMERICAN DISTILLING COMPANY v.
LIQUOR CONTROL COMMISSION

COURT OF COMMON PLEAS   HARTFORD COUNTY   FILE NO. 45265

Memorandum filed March 13, 1946.

*Schatz and Weinstein,* of Hartford, for the Relator.

*Bernard Kosicki* and *Thomas Conroy,* of Attorney General's staff, for the Respondent.

CULLINAN, J. Under the authority of General Statutes, Sup. 1941, § 456f, the Connecticut liquor control commission is empowered to issue out-of-state shipper's permits for alcoholic liquor, such permits to allow the sale of alcoholic liquor to manufacturers and wholesale permittees in this state. However, no holder of an out-of-state shipper's permit shall ship, transport or deliver or sell or offer for sale any alcoholic liquor in Connecticut unless the name of the brand, trade name or other distinctive characteristic by which such liquor is bought and sold shall be registered with and approved by the liquor control commission, Sup. 1941, § 469f.

The relator, a Maryland corporation, is and has been for a substantial period the holder of an out-of-state shipper's permit issued by Connecticut. On September 7, 1945, the relator applied to the respondent commission for the registration of one of its products—a brand or trade name known as "Private Stock Whiskey." Inasmuch as the registration has been refused

and inasmuch as the respondent has declined to approve the brand, trade name or other distinctive characteristic of the commodity, the relator seeks a peremptory writ of mandamus to compel such registration and approval.

In applying for registration of "Private Stock Whiskey," the relator submitted to the respondent a reproduction or facsimile of the front and back labels which it proposed to affix to the bottles containing the product. The front label, attractively printed on gold and white paper, carries the words "Private Stock" in large type and causes them to be conspicuous and distinctive through the employment of gold and red and black ink. Under the legend "Private Stock Whiskey" appears a paragraph of descriptive material, reading: "A superb quality whiskey of excellent character and distinctive flavor, produced by The American Distilling Company with almost half a century experience in the distillation of fine American whiskies."

The back label, likewise printed on gold and white paper, again carries the words "Private Stock" in bold type with further use of gold and red and black ink. At the bottom of this back label, in substantially reduced type, appears this legend: "Whiskey—colored and flavored with wood chips— eighty proof—this whiskey is less than one month old."

In declining to register and approve the relator's proposed brand or trade name, the respondent relied, in part, upon § 984e, Cum. Sup. 1939, which says: "There shall be no advertising, labeling, bottling or canning of alcoholic liquor which shall, in any way, deceive or tend to deceive, a purchaser or consumer of such alcoholic liquor as to the nature, quality or quantity of such liquor, and all advertising, labeling, bottling or canning of alcoholic liquors, shall be subject to such rules and regulations as the liquor control commission shall prescribe."

While the respondent has formulated and promulgated no specific or independent rules and regulations under § 984e, nevertheless it has, under its broad administrative authority, incorporated by reference regulations announced by the federal alcohol administration relating to the labeling of distilled spirits. For all practical purposes, then, these federal regulations have been absorbed by Connecticut and have become an essential part of the respondent's system for the supervision and control of alcoholic beverages.

Apparently, the federal alcohol administration and the Connecticut General Assembly found common ground upon which they might meet to regulate the labeling of liquor containers, since the federal regulation on the subject was drafted to reach a result identical with that intended by § 984e—the protection of the consuming public from deceptive labels or from labels tending to deceive or to create a misleading impression. Section 41 of the federal regulations, which, as noted, has been adopted by the respondent as one of its regulations, provides that any labels on bottles containing distilled spirits shall not bear any statement that is false or untrue, or that, irrespective of falsity, directly or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression.

During the calendar year 1945 the respondent received for proposed registration approximately three to four thousand liquor labels. Of this number all were approved save ten or twelve. Further, in May, 1945, the respondent adopted an administrative policy for its office staff requiring that each whiskey label which indicated the age of the product as being two years or less, or the whiskey content of the product as being 25 per cent or less, be submitted for the scrutiny of the members of the liquor control commission. The policy was enunciated in the reasonable belief that any label attached to a whiskey less than two years of age might well be deceptive or might well contain irrelevant descriptive material tending to deceive or mislead.

When the relator's "Private Stock Whiskey" labels (front and back) were submitted to the respondent, they were examined and scrutinized by the commission members with a view to determining whether they offended § 984e or the respondent's regulation concerning labeling. It was concluded that the brand or trade name should not be registered because:

1. The words "Private Stock," in their accepted sense, indicate an unusual, choice or special product, whereas, in fact, the relator's so-called "Private Stock" whiskey was less than one month old with no opportunity to age and thus acquire unusual or choice characteristics.

2. The distiller's front-label reference to the product as "a superb quality whiskey" was deceptive and misleading since, from the standpoint of age and content, the product barely

met the basic minimum requirements of the federal alcohol administration.

3. The distiller's front-label reference to the product as a whiskey of "excellent character and distinctive flavor" was equally deceptive since its freshness and newness made impossible the acquisition of mellowness, potability, character or flavor.

4. The design of the front and back labels, the printing of them on gold and white stock, the use of colored inks to create their distinctive appearance, and the employment of various sizes of type to stress attractive phases of the product and to conceal its undesirable features had been accomplished with a fixed purpose of attempting to mislead the public.

Both the statute and the regulation under which the respondent declined to register the relator's labels are direct and unambiguous. Their comprehensive terms condemn every statement or device or artifice which may deceive or tend to deceive. Deception always results from the use of statements manifestly false or patently untrue. Deception may result from the use of statements not technically false or which may be literally true. The evident design of § 984e and the respondent's regulation is to prevent deception resulting from ambiguity and indirection, as well as from statements which are false.

One purpose of the Liquor Control Act is undoubtedly to protect the buying and consuming public from liquors which have been attractively packaged and then mislabeled. I believe the General Assembly never intended actual deception of liquor purchasers to be the ultimate test by which a label should be judged. So long as the labeling is of the character to deceive or mislead, then, in my pudgment, it is faulty and has no place on a product to be sold or offered for sale in a public market. For the labeling to be deceptive or misleading, omission in statement as well as inclusion is vital in resolving the issue. All printed and graphic matter on, in, or accompanying the product should be considered in determining whether the whiskey is mislabeled. Thus, when the respondent, in the exercise of sound judgment, declined to approve and register the relator's labels, it acted reasonably and legally and in the public interest.

Counsel for the relator argue that the respondent's duty to approve and register the submitted labels was ministerial in

nature, admitting of no discretion or independent judgment. Thus, says the relator, performance of this ministerial duty can be enforced by mandamus.

The act of approval " 'imports the act of passing judgment, the use of discretion, and the determination as a deduction therefrom. . . .' , , , 'The word "approve" is "to regard or pronounce as good; think or judge well of; admit the propriety or excellence of; be pleased with. . . ." ' " *Melton* v. *Cherokee Oil & Gas Co.*, 67 Okl. 247; see also *Gustafson* v. *Wethersfield Township High School*, 319 Ill. App. 255, 260; *McCarten* v. *Sanderson*, 111 Mont. 407; *Malmo's Appeal*, 72 Conn. 1.

I must conclude, then, that the Connecticut General Assembly, in requiring the approval of the respondent commission as a condition precedent to the registration of liquor labels, intended to vest in the respondent a discretionary power to sanction officially, rather than limit the respondent to a mere verification of the facts stated in the application for registration. The members of the liquor control commission could scarcely be expected to discharge their obligation to the consuming public were they fettered in the exercise of sound judgment, practical sagacity, wise discretion and final direct affirmative action. To hold otherwise would result in virtual destruction of the commission's strength, force, influence and utility as an agency of state government and would open the floodgates to a deluge of mislabeled liquor.

Accordingly, the writ is denied and the respondent may re cover its costs.